JOSEPH M. FOLEY, Appellant/Cross-Respondent, v. MORSE & MOWBRAY, a Professional Corporation; WILLIAM R. MORSE; JOHN H. MOWBRAY; CHRISTOPHER H. BYRD; STEVEN R. SCOW; HAROLD M. MORSE; MOFOBS, a Co-Partnership, Respondents/Cross-Appellants.

No. 21901

March 11, 1993 848 P.2d 519

[Rehearing denied August 16, 1993]

*Pico & Mitchell,* Las Vegas, for Appellant/Cross-Respondent.

*Pearson & Patton,* Las Vegas, for Respondents/Cross-Appellants.

## OPINION

*Per Curiam:*

*Facts*

In January, 1971, the firm of Morse, Foley & Wadsworth was

formed as a professional corporation, and Joseph M. Foley (Foley) signed an employment agreement requiring him to account to the corporation as his employer for all compensation that he received. Several years later, Jim Wadsworth left the firm, leaving Foley and William R. Morse (Morse) as fifty percent shareholders under the law firm name of Morse-Foley. At that time, the principal client of the firm was the Hughes Tool Company. Foley was the source of the Hughes business, having worked for a number of years on business matters for Hughes in Nevada prior to the inception of the firm. In the early years of Morse-Foley, Harold M. Morse, John H. Mowbray, Steven Scow, and Christopher Byrd joined the firm as associates. At various time, Foley promised the four associates that they would become shareholders. In a memo dated May 12, 1982, Foley proposed diluting his interest to forty percent. This was never done, however, and at trial Foley testified that during that time he was considering a departure from the firm because he did not want to hold only a minority interest.

On February 23, 1984, Foley entered into an agreement with his sole partner at that time, Morse, and the firm's associates, which governed the distribution of their interests in the attorney's fees received from the estate of Howard Hughes. An agreement dated June 14, 1984, anticipated Foley's departure from the firm on September 28, 1984, and attempted to resolve the remaining differences of the six principals of Morse-Foley. The agreement gave Foley a twenty-three percent interest in all cash on hand and accounts receivable as of his date of departure. When Foley departed from the firm on September 28, 1984,[1] he wrote a memo to Morse entitled "Agreements between JMF [Foley] and Corporation" in which he acknowledged a "mutual agency" between Foley and the corporation which created a "fiduciary duty" for each party.

Despite these agreements, the parties disputed the distribution of fees from the Hughes estate. By the time Foley departed from Morse-Foley, the administrators of the Hughes estate had awarded the firm eight interim fees, and these payments were to be offset against a final gross award of a fee when the estate closed. Based on the June 14, 1984, agreement, Morse & Mowbray paid Foley $43,574.77 under the ninth interim award. Asserting that he had a right to a greater share of these interim fees, Foley filed a lien on December 11, 1984, against the ninth interim fee award of the Hughes estate. On June 6, 1985, the district court told Foley that the appropriate action was to request an accounting. On December 31, 1985, when Morse & Mowbray

---

[1]Morse and the associates comprise the resulting firm of Morse & Mowbray.

applied for the tenth interim fee, Foley disregarded the judge's advice and again filed a lien against a Hughes fee award. The district court also quashed that lien, and on October 30, 1986, this court affirmed the lower court's determination by filing an order dismissing the appeal and advising Foley that the appropriate action was to request an accounting.

By December 31, 1986, Morse & Mowbray had made six separate accountings to Foley and had paid him a total of $2,441,209.00 in post-separation fees. Until the district court compelled production with an order filed on March 27, 1990, Foley's only accounting was a letter regarding a minor case he had taken with him and the payment of $69.00 to Morse & Mowbray. Although the June 14, 1984, agreement gave Foley the right to inspect the accountings at Morse & Mowbray's office, Foley never personally inspected them.

On February 18, 1988, Foley sued Morse & Mowbray and the firm's individual partners, alleging that the firm had failed to pay Foley the appropriate percentages of collected fees due from the Hughes and Rice estates. The Rice estate concerned the administration of the estate of Candace Daly Rice and the guardianship established for the sole minor heir. Foley also alleged breach of contract and breach of trust, and he requested an accounting. Morse & Mowbray counterclaimed, requesting relief in the form of a declaration of the rights, duties, and obligations of the parties under their written agreements, an accounting of fees due them from Foley, attorney's fees and costs in defending the suit, and the imposition of a constructive trust on real property owned by Foley and James Hogan in which Morse & Mowbray claimed an interest.

The district court found for Morse & Mowbray on all issues, except it refused to impose a constructive trust on the Hogan property in favor of Morse & Mowbray. In addition, the district court awarded Morse & Mowbray a net judgment of $1,053.22, sanctions of $1,800.00 against Foley for withholding a document and costs in the amount of $23,688.05. Also, attorney's fees of $121,712.67 were awarded pursuant to NRS 18.010 because the court found that Foley had brought suit in bad faith and to harass Morse & Mowbray. Foley appealed, alleging numerous improprieties and errors. Morse & Mowbray cross-appealed on the issue concerning the constructive trust on the Hogan property.

### Discussion

I.  *Foley's Appeal*

      A.  *Judicial Bias, Interim Awards, Shaw Offset*

Foley argues that he was denied the right to a fair trial. He

claims that the judge abused his discretion, made errors of law, and made 'disparaging remarks to Foley and his attorney that showed judicial bias against him. In Nevada State Bank v. Snowden, 85 Nev. 19, 449 P.2d 254 (1969), this court stated that "unless specifically objected to at trial, objections to a substantive error in the absence of constitutional considerations are waived." *Id.* at 21, 449 P.2d at 255. A party who claims judicial misconduct on appeal should make a specific objection at trial, and Foley made no such objection. Because Foley failed to preserve the objection of judicial misconduct, we conclude that his claim on that issue is meritless.

Foley argues that the February 23, 1984, agreement was meant to encompass interim awards of Hughes fees made and funded after his withdrawal from the firm, and that the court should interpret the agreement to include an essential omitted term that would provide for the ninth and tenth interim awards. Under the trial court's ruling, Foley received twenty-three percent of the ninth interim award and nothing under the tenth interim award, which was wholly earned after he separated from the firm. Under the March 23, 1987, agreement, which was a settlement between Foley and Morse & Mowbray with respect to the Hughes estate fees, Foley received a Hughes fee award of $1,323,873.32. We have reviewed the agreement and conclude that the trial court's interpretation of it was fair and reasonable.

Foley also argues that the court erred when it allowed Morse & Mowbray an offset of $22,627.46 against Foley on two accounts, the Shaw estate and the Shaw custody matters, that were originally with Morse-Foley. When Foley left Morse-Foley, the firm allowed him to take the Shaw files, and it assigned him the duty to collect on the accounts on behalf of the firm. Foley instructed his client not to pay the firm on the Shaw estate matter, and he failed to collect on both cases. The court found that the offset was proper and that Foley breached his fiduciary duty, not only by failing to collect the fees due, but by advising the client not to pay the agreed amount. After review of these facts, we conclude that Foley's claim with respect to the Shaw matters is meritless.

### B. *The Contingent Fee Cases*

Foley claims that the court erred when it awarded Morse & Mowbray an interest in three contingency fee cases identified as Father Kenny, Lawyer Johnson, and Cynthia Gifford. In a similar case concerning a law firm dissolution, the California Court of

Appeals ruled that every partner must account to the partnership for any benefit and hold as trustee for it any profits derived without the consent of the other partners from any transaction of the partnership or from any use of its property. Rosenfeld, Meyer & Susman v. Cohen, 237 Cal.Rptr. 14, 22-23 (Ct.App. 1987). The court stated that failure to account properly was a burden of proof that rested with the fiduciary who had contravened duties enabling allocation and accounting. *Id.* at 23. Foley, who was in a position to make the allocation, failed to do so. "The most elementary conceptions of justice and public policy require that the wrongdoer shall bear the risk of the uncertainty which his own wrong has created." Bigelow v. RKO Radio Pictures, 327 U.S. 251, 265 (1946). Since Foley failed to bear his burden to account, we conclude that the trial court's rulings in favor of Morse & Mowbray with respect to the three contingency fee cases were not erroneous.

## C. *Rice Estate Fees*

Foley also appeals the trial court's finding that there was no justification for collateral attack on the final fee award to Morse & Mowbray in the estate of Candace Daly Rice.

Candace Daly Rice died in a car accident in Oregon in June, 1981. The firm was hired to handle the administration of the estate, which had assets of approximately $8.7 million, and William R. Morse was named in the will as a co-executor of the estate. In addition, during the administration of the estate, Morse was appointed as the guardian for Rice's orphaned son, the sole heir of the estate, Marcus Daly Lamb, who was adopted by Morse's son. Also, Morse was a trustee of the testamentary trust together with Valley Bank and another party. In sum, Morse served in four different capacities with respect to his work for the Rice estate: as co-executor, trustee, guardian, and attorney for the estate.

Foley claims that the final fee the firm requested ($325,000.00) for work done on the estate was far below the "5% rule,"[2] and that the district court, using the grounds of res judicata and collateral estoppel, improperly excluded evidence that Morse & Mowbray breached its fiduciary duty to Foley when it requested only one-third of the fees to which it was entitled.

In an order dated February 28, 1986, Judge Leavitt settled the fifth and final accounting and awarded $325,000.00 in fees from the $8,743,163.59 Rice estate to Morse & Mowbray. Foley was entitled to approximately $54,000.00 in fees under the separation

---

[2]Under the "5% rule," a law firm's fees for administering an estate amount to five percent of the value of the estate.

agreement of June 14, 1984. Seeking to collaterally attack the judge's award in the total amount of $325,000.00, Foley claims that a reasonable fee should have been between $900,000.00 and $1,100,000.00. Foley cites no statute or case to support the "5% rule" and concedes it is a "rule of thumb." Even if it were mandatory that it apply, taking into account all of the fees paid to other attorneys involved in the administration of the estate, the total fees paid to Morse & Mowbray ($325,000.00) and other attorneys ($462,613.45) were more than five percent of the value of the estate's assets. We conclude that Foley's claim that he is due a percentage of a higher fee on the Rice estate because of the "5% rule" is meritless.

The district court found that Foley should have intervened and appealed the award in February, 1986, when the Rice estate closed. However, because the district court refused to admit any evidence or testimony on the Rice estate claim, the finding that Foley had the opportunity to intervene and appeal is not supported by any evidence in the record.

Whether Foley could have intervened and appealed is a question of fact and law. Since the Rice estate is closed, Foley may not assert a claim against it. *See* NRS 147.040(2) (even if a claimant did not have statutory notice, the claim against an estate must be filed before the filing of the final account). However, Foley may have a claim against Morse or against Morse & Mowbray for his share of the fees that Foley claims were waived, on the basis that Morse or the firm breached a fiduciary duty or exceeded actual authority. Therefore, we reverse and remand this matter to the district court for an evidentiary hearing and findings as to whether Foley could have intervened and appealed as an interested party in the Rice probate proceedings and whether he is thereby precluded from now collaterally attacking the claimed waiver of the administration fees.

### D. *Waiver of Guardianship Fees*

Foley claims that Morse & Mowbray spent more than 1150.1 hours of work on the guardianship which were never billed or collected, and that he is entitled to a share of the fees that were waived without his consent.

The district court ruled that the guardianship fees were properly waived by Morse, who served as the guardian of the sole minor beneficiary. NRS 159.183 provides that "[a] guardian shall be allowed reasonable compensation for his services as guardian and . . . reasonable expenses incurred in retaining . . .

attorneys." Because a client should not have to pay for duplicative services, Morse could not charge full compensation for the same service in his different capacities as guardian, attorney, trustee, and co-executor. Matter of Estate of Larson, 694 P.2d 1051 (Wash. 1985). However, Morse could have received fees in his capacity as a guardian for performing services different than those as an attorney. See Gaines v. Johnson, 119 S.E.2d 28 (Ga. 1961) (one acting as both a guardian and an executor can collect both guardianship fees and executor's fees); see also Prostack v. Songailo, 97 Nev. 38, 623 P.2d 978 (1981) (guidelines necessary to determine the reasonableness of attorney's fees include the quality of the advocacy, the character of the work to be done, the work actually performed by the attorney, and the result). Morse could have received fees in his capacity as a guardian for performing services different than those in his other capacities. Generally, guardianship fees are considered personal compensation. See Farish v. Jewett, 120 So.2d 642 (Fla. 1960) (a guardian, although a member of a law firm, was entitled to be paid in person for his services as the guardian of an estate); In Re Krecl's Guardianship, 85 So.2d 727 (Fla. 1956) (personal compensation is allowed so long as guardian does not breach a fiduciary duty). On the other hand, under an employment agreement that Morse seemed to ratify at trial, guardianship fees earned by the partners were to be the property of the firm. Thus, whether Morse was entitled to the fees as a guardian personally or a member of the firm is a question of fact. If Morse were entitled to the fees personally, he had the right to waive them; however, if he were entitled to the fees as a firm member for work he performed as the guardian and there was no legal justification for waiving those fees, then Foley had an interest in a share of those fees that were earned prior to Foley's departure. For these reasons, we conclude that the district court erred in ruling, without taking evidence, that the guardianship fees were appropriately waived.

### E. *Findings of Fact and Conclusions of Law*

Foley claims that the district court adopted Morse & Mowbray's proposed findings of fact and conclusions of law without any changes and without any reference to the record, and that this was error. See Flowers v. Crouch-Walker Corp., 552 F.2d 1277, 1284 (7th Cir. 1977) (a critical view of a finding is appropriate where the findings of fact and conclusions of law were not the original product of a disinterested mind); FRCP 52(a). In Foster v. Bank of America, 77 Nev. 365, 365 P.2d 313 (1961), this court observed that NRCP 52(b) "now contemplates ex parte findings subject to the right of the other party to move to amend the

same." *Id.* at 373, 365 P.2d at 318. Foley moved to amend the findings of fact and conclusions of law under NRCP 52(b) and submitted his own proposed findings of fact and conclusions of law. As discussed above, the district court's findings of fact and conclusions of law concerning the Rice estate are questionable because the court did not admit evidence pertaining to the issue. We have reviewed Foley's claims as to other findings of fact and conclusions of law, and because the record supports them, we conclude there was no error. Therefore, we reverse and remand as to the Rice probate proceedings so that Foley will have an opportunity to present evidence on that issue, and we find meritless the remaining claims of error that Foley raises in regard to the findings of fact and conclusions of law.

## F. *Attorney's Fees and Sanctions*

Foley next argues that the district court erred in sanctioning him for bringing suit in bad faith when it awarded attorney's fees to Morse & Mowbray. An award of attorney's fees under NRS 18.010(2)(b) is within the discretion of the district court. Marine Midland Bank v. Monroe, 104 Nev. 307, 308, 756 P.2d 1193, 1195 (1988). The district court imposed sanctions because it believed that Foley had shown bad faith throughout this dispute and had abused the discovery process. For example, while Morse & Mowbray made six separate detailed accountings to Foley over a five-year period, Foley's only accounting from the approximately fifty cases that he had taken with him was a one-page letter regarding a single file. Although the district court had reason to impose sanctions, we conclude that, in light of the complexity of the issues involved, the sanctions were severe. Moreover, since we have come to a different conclusion than the district court as to the issue of the guardianship fees for the sole minor beneficiary of the Rice estate, we question whether the district court would nevertheless have imposed such harsh sanctions had it come to the same conclusion as we have on that issue. For these reasons, we reverse and remand the order imposing sanctions on Foley. Once the district court has taken evidence on the Rice probate proceedings and the guardianship fees, it shall reconsider the amount of sanctions to be imposed in light of its estimation of the good faith and validity of Foley's claims.

## II. *Morse & Mowbray's Cross-Appeal*

### A. *The Hogan Property*

For the fourteen years that Foley was employed at Morse-Foley, the firm provided legal services at no cost to James A.

Hogan. In February, 1981, many years after the law firm had been established, Hogan formally deeded a one-half interest in Lee Canyon acreage (the Hogan property) to Foley. Foley and Hogan claimed that this interest was given to Foley as compensation for work Foley did prior to entering the firm of Morse-Foley. Not until 1986, after Foley had left the firm, did Morse & Mowbray learn of this transaction. The court found that Foley had a contract of employment under which he was obliged to account for all compensation, and that he failed to make full and frank disclosure of compensation he had received for his legal work. Foley recorded his ownership while he was a shareholder in Morse-Foley, but he did not disclose this recorded deed to the law firm. However, the court never specifically found that the interest Foley received was earned during the existence of Morse-Foley, although such can be inferred from the other findings.

While a shareholder in Morse-Foley, Foley defended a partition suit involving the Hogan property and did not disclose to the court or the parties his claimed interest or ownership in the property. Apparently, no fee was charged for this representation. The court further found that Foley had failed to meet his burden of proving that he did not breach his fiduciary duty to the firm and that he provided no evidence that he had made full disclosure to Morse. Instead, Foley testified that he had been given a deed to one-half of the Hogan property prior to association with his former firm and that this deed had been lost. The court found that there was no substantial evidence of that deed. Furthermore, the court found that Foley had not paid property taxes before recording the deed in 1981, nor had he declared the property as personal income. However, the court declined to impose a constructive trust or award seventy-seven percent of one-half of the present value because of "frequent contact" between Hogan, Foley, and the firm.

In view of the findings and the record before us, we conclude that Foley's non-disclosure of his one-half interest in the Hogan property was a breach of his fiduciary duty. In Golden Nugget v. Ham, 95 Nev. 45, 48, 589 P.2d 173, 175 (1979), this court stated that "when a party who is relied upon in a fiduciary capacity fails to fulfill his obligations thereunder, and does not tell the other party of his failure, his omission constitutes constructive fraud." In such circumstances, the statute of limitations may be tolled. *Id.* Also, during the suit for partition, Foley was required to set forth the nature and extent of his one-half interest in the Hogan property to the court. *See* NRS 39.070 (defendants to a suit for partition are required to set forth the nature and extent of their interest in the property); SCR 158(10) ("[a] lawyer shall not

acquire a proprietary interest in the cause of action or subject matter of litigation the lawyer is conducting for a client"); SCR 172(1)(a) ("[a] lawyer shall not knowingly . . . [m]ake a false statement of material fact or law to a tribunal"). Thus, Foley wrongfully failed to disclose his property interest to the court during the partition suit and he breached his fiduciary duty of full disclosure to his law firm with respect to the Hogan property. Furthermore, while he provided only vague and conflicting evidence about the "lost deed," he recorded the deed and started paying taxes on the property in 1981, from which we infer that he acquired title to one-half of the Hogan property while he was subject to the terms of his employment contract with Morse-Foley.

In Namow Corp. v. Egger, 99 Nev. 590, 592, 668 P.2d 265, 267 (1983), this court stated, "A constructive trust is a remedial device by which the holder of legal title to property is deemed to be a trustee of that property for the benefit of another who in good conscience is entitled to it." We conclude that Foley, who was entitled to twenty-three percent of the firm assets at the time of his departure, would be unjustly enriched at the expense of Morse & Mowbray if he were allowed to retain one hundred percent ownership of one-half of the Hogan property, and that this warrants the imposition of a constructive trust on the Hogan property for the benefit of Morse & Mowbray. Accordingly, we reverse and order the district court to conduct an evidentiary hearing to award Morse & Mowbray seventy-seven percent of one-half of the present value of the Hogan property, and to impose a constructive trust on the Hogan property to secure that award.

## Conclusion

In summary, we reverse and remand for a hearing and findings as to: (1) whether Foley could have intervened in the Rice estate and is thereby precluded from collaterally attacking the fees charged the estate; and if not, the amount of fees to which he is entitled, if any; (2) whether the guardianship fees were properly waived by Morse; and if not, the amount of the fees to which Foley is entitled; (3) the present value of seventy-seven percent of one-half of the Hogan property to which Morse & Mowbray are entitled and the imposition of a constructive trust on the Hogan property to secure this amount; (4) a reassessment of the sanctions to be imposed on Foley; and (5) such other action and orders consistent with this opinion that are necessary for the complete disposition of this case. Due to the need for findings on the Rice estate issues, we vacate the sanctions that were awarded against Foley. With respect to the Hogan property, we reverse

and remand for further proceedings as directed. On the remaining issues, we find Foley's contentions without merit.[3]

ROSE, C. J., STEFFEN and SPRINGER, JJ., and GAMBLE, D.J.,[4] concur.

---

[3]THE HONORABLE CLIFF YOUNG, Justice, voluntarily recused himself from participation in the decision of this appeal. THE HONORABLE MIRIAM SHEARING, Justice, did not participate in the decision of this appeal.

[4]The Honorable David R. Gamble, Judge of the Ninth Judicial District Court, was designated by the Governor to sit in place of THE HONORABLE JOHN C. MOWBRAY, Justice. Nev. Const. art. 6, § 4.