**NEVADA POWER COMPANY, Plaintiff,**

v.

**MONSANTO COMPANY,
et al., Defendants.**

**No. CV–S–89–555–DAE(LRL).**

United States District Court,
D. Nevada.

May 30, 1995.

---

Douglas Cohen, Jones, Jones, Close & Brown, Las Vegas, NV, Ralph A. Bradley, Bradley & Gordon, Eugene, OR, Paul E. Merrell, Bradley & Merrell, Tidewater, OR, John H. Kim, Michael T. Gallagher, Craig Lewis, Fisher, Gallagher & Lewis, L.L.P., Houston, TX, and Richard Hinckley, Vice President, Secretary & Chief Counsel Nevada Power Co., Las Vegas, NV, for plaintiff.

John L. Thorndal, Peggy A. Leen, Thorndal, Backus, Maupin & Armstrong, Las Vegas, NV, for Westinghouse Elec. Corp. and Monsanto Co.

John Tatlock and Bruce A. Featherstone, Kirkland & Ellis, Denver, CO, for Monsanto Co.

John H. Bae, Konrad Cailteux, Jeffrey Klein, and Arvin Maskin, Weil, Gotshal & Manges, New York City, for Westinghouse Elec. Co.

David R. Clayson, Bruce Alverson, Alverson, Taylor, Mortensen, Nelson & Sanders, Las Vegas, NV, and Steven R. Kuney, Williams & Connolly, Washington, DC, for General Electric Co.

*ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON DEFENDANTS GENERAL ELECTRIC AND WESTINGHOUSE'S MOTION FOR SUMMARY JUDGMENT AND DEFENDANT MONSANTO'S MOTION FOR SUMMARY JUDGMENT*

DAVID ALAN EZRA, District Judge.

On April 26, 1994, Defendants Monsanto Company ("Monsanto"), General Electric

Company ("GE"), and Westinghouse Electric Corporation ("Westinghouse") filed a joint motion for summary judgment on claims of fraud by misrepresentation (Count I) and fraud by nondisclosure (Count IV) by Plaintiff Nevada Power Company ("Nevada Power") based on statute of limitations grounds. Monsanto filed a separate motion for summary judgment on the claims themselves on April 26, 1994. GE and Westinghouse also filed a motion for summary judgment on the misrepresentation and nondisclosure claims on April 26, 1994.

On November 9, 1994, after considering the parties' supporting and opposing memoranda as well as their oral arguments, Magistrate Judge Leavitt, filed a Report and Recommendation ("R & R") on each of the three motions. The magistrate judge found in favor of Defendants on all motions. Plaintiff Nevada Power subsequently filed specific objections to the R & Rs. The parties filed opposing and reply memoranda to these objections.

The court heard oral argument on these motions on May 9, 1995. Bruce Featherstone, Esq., appeared on behalf of Defendant Monsanto; Steven R. Kuney, Esq., and Bruce Alverson, Esq., appeared on behalf of Defendant GE; Arvin Maskin, Esq., appeared on behalf of Defendant Westinghouse; and John Kim, Esq., appeared on behalf of Plaintiff Nevada Power. After considering the oral arguments and making a thorough *de novo* review of the file and the supporting and opposing memoranda, the court finds that the record substantiates the magistrate judge's factual conclusions and interpretation of the law.

Because the court finds the magistrate judge correct in both his recitation of facts and his interpretation of the law, the court, pursuant to 28 U.S.C. § 636(b)(1)(C), ADOPTS the magistrate judge's R & Rs on Defendants' Motions for Summary Judgment on the misrepresentation and nondisclosure claims. Accordingly, the court GRANTS the Motion for Summary Judgment by GE and Westinghouse on the claims for fraud by misrepresentation (Count I) and fraud by nondisclosure (Count IV) and GRANTS Monsanto's separate Motion for Summary Judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Nevada Power filed suit against Defendants Monsanto, GE, and Westinghouse in Nevada state court on July 7, 1989. Nevada Power alleged, *inter alia*, that all Defendants knew of the environmental dangers of polychlorinated biphenyl (PCB) products manufactured by Monsanto, and contained in electrical equipment sold by GE and Westinghouse to Nevada Power during the 1950s, 1960s, and 1970s. Plaintiff claims that all Defendants fraudulently misrepresented and failed to disclose the hazardous nature of PCBs contained in capacitors and transformers purchased by the utility company.

Pursuant to the Toxic Substances Control Act of 1976, the Environmental Protection Agency ("EPA") promulgated regulations restricting the use of PCBs. During the late 1970s, in response to the heightened awareness of PCB toxicity, Nevada Power began removing PCB-containing transformers and capacitors before their useful lives had been completed. Nevada Power seeks to recover the costs of replacing that equipment.

In its original complaint, Nevada Power sought damages under theories of fraud and misrepresentation, failure to warn, implied equitable indemnity, implied warranty, strict products liability, negligence, and nuisance. Defendants removed the case to federal court based on diversity of citizenship, and filed a joint motion for summary judgment. The court granted Defendants' motion, concluding that all of Plaintiff's claims were time-barred, and that Nevada Power had failed to state a claim for equitable indemnity. Order Granting Defendants' Joint Motion for Summary Judgment, July 30, 1990.

The Court of Appeals affirmed the district court's grant of summary judgment on the equitable indemnity claim, but reversed and remanded for further proceedings on the question of whether Nevada Power's fraud and failure to warn claims were barred by the Nevada statute of limitations. *Nevada*

*Power Co. v. Monsanto Co.,* 955 F.2d 1304, 1310 (9th Cir.1992).[1]

Nevada Power did not contest the fact that it knew of the hazards of PCBs by 1979. Defendants argued that such knowledge imposed a duty of due diligence on Nevada Power to investigate the possibility of fraud and that Nevada Power's action in fraud began accruing under Nevada's discovery-based statute of limitations by 1979. *Id.* at 1307. However, Nevada Power countered that it was not until 1988, by examining certain internal documents of the Defendants, that it discovered that the alleged misrepresentations were intentional. The Ninth Circuit ruled that the statute of limitations was tolled until Nevada Power learned that Defendants' alleged misrepresentations were not only false but willful as well. *Id.* The circuit court found that from the facts before the court at that time, it could be reasonably inferred that Nevada Power may have plausibly believed that any misrepresentations regarding PCBs were innocent mistakes rather than part of a willful cover-up. *Id.* at 1308. The Ninth Circuit concluded that Defendants had not met their "extremely difficult burden to show that there exist[ed] no issue of material fact regarding notice," thus precluding summary judgment. *Id.*

After conducting further discovery following the Ninth Circuit's decision, however, Defendants now claim that additional information possessed by Nevada Power, as early as 1977 but no later than 1982, constituted notice for the purpose of initiating a fraud action. On April 26, 1994, Defendants filed a joint motion for summary judgment on Nevada Power's two remaining claims based on statute of limitations grounds. In addition, on April 26, 1994, Monsanto filed a separate motion for summary judgment on the claims themselves. GE and Westinghouse also filed a motion for summary judgment on the two fraud claims on April 26, 1994. After hearing oral argument and considering the supporting and opposing memoranda, the magis-

trate judge submitted an R & R on each of the three motions to the United States District Court for the District of Nevada on November 9, 1994, pursuant to Local Rule 510–2. The magistrate judge found in favor of the Defendants in each motion.

This court now ADOPTS the magistrate judge's reports and recommendations and holds that no issue of material fact exists precluding summary judgment in favor of Defendants Westinghouse, General Electric, and Monsanto and GRANTS summary judgment in favor of all Defendants.[2]

## STANDARD OF REVIEW

### I. Magistrate Judge's Report and Recommendation

Any party may object to a magistrate judge's case-dispositive proposed order, findings, or recommendations. 28 U.S.C. § 636(b)(1)(B); Fed.R.Civ.P. 72(b); Local Rule 510–2. The district court must make a *de novo* determination of those portions of the magistrate judge's report to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. *Id.* De novo review means the court must consider the matter anew, the same as if it had not been heard before and as if no decision previously had been rendered. *Ness v. Comm'r of Internal Revenue Service,* 954 F.2d 1495, 1497 (9th Cir.1992). Thus, although the district court need not hold a *de novo* hearing, the court's obligation is to arrive at its own independent conclusion about those portions of the magistrate judge's findings or recommendations to which objections are made. *United States v. Remsing,* 874 F.2d 614, 617 (9th Cir.1989).

### II. Summary Judgment

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). The moving party has the

---

1. On appeal, Nevada Power did not pursue its claims of implied warranty, strict products liability, negligence, and nuisance.

2. Having disposed of Counts I and IV against all Defendants, the court declines to address Defendants' Joint Motion for Summary Judgment on Statute of Limitation grounds.

initial burden of "identifying for the court those portions of the materials on file in the case that it believes demonstrate the absence of any genuine issue of material fact." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986)). In a motion for summary judgment, the court must view the facts in the light most favorable to the nonmoving party. *State Farm Fire & Casualty Co. v. Martin,* 872 F.2d 319, 320 (9th Cir.1989).

▮ Once the moving party has met its burden of demonstrating the absence of any genuine issue of material fact, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *T.W. Elec.,* 809 F.2d at 630; Fed.R.Civ.P. 56(e). The opposing party may not defeat a motion for summary judgment in the absence of any significant probative evidence tending to support its legal theory. *Intel Corp. v. Hartford Accident & Indemnity Co.,* 952 F.2d 1551, 1558 (9th Cir.1991). The nonmoving party cannot stand on its pleadings, nor can it simply assert that it will be able to discredit the movant's evidence at trial. *T.W. Elec.,* 809 F.2d at 630; *Blue Ocean Preservation Soc. v. Watkins,* 754 F.Supp. 1450, 1455 (D.Haw.1991); Fed.R.Civ.P. 56(e). If the nonmoving party fails to assert specific facts, beyond the mere allegations or denials in its response, summary judgment, if appropriate, shall be entered. *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 884, 110 S.Ct. 3177, 3186, 111 L.Ed.2d 695 (1990); *T.W. Elec.,* 809 F.2d at 630; Fed.R.Civ.P. 56(e). There is no genuine issue of fact if the opposing party fails to offer evidence sufficient to establish the existence of an element essential to that party's case. *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552; *Citadel Holding Corp. v. Roven,* 26 F.3d 960, 964 (9th Cir.1994); *Blue Ocean,* 754 F.Supp. at 1455.

▮ In considering a motion for summary judgment, "the court's ultimate inquiry is to determine whether the 'specific facts' set forth by the nonmoving party, coupled with undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence." *T.W. Elec.,* 809 F.2d at 631 (citing *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). Inferences must be drawn in favor of the nonmoving party. *T.W. Elec.,* 809 F.2d at 631. However, when the opposing party offers no direct evidence of a material fact, inferences may be drawn only if they are reasonable in light of the other undisputed background or contextual facts and if they are permissible under the governing substantive law. *Id.* at 631–32. If the factual context makes the opposing party's claim implausible, that party must come forward with more persuasive evidence than otherwise necessary to show there is a genuine issue for trial. *Bator v. State of Hawaii,* 39 F.3d 1021, 1026 (9th Cir.1994) (citing *California Architectural Bldg. Prods., Inc. v. Franciscan Ceramics,* 818 F.2d 1466, 1468 (9th Cir.1987), *cert. denied,* 484 U.S. 1006, 108 S.Ct. 698, 699, 98 L.Ed.2d 650 (1988)).

### *DISCUSSION*

**I. DEFENDANTS GENERAL ELECTRIC AND WESTINGHOUSE'S MOTION FOR SUMMARY JUDGMENT**

A. Fraud by Misrepresentation

1. *Affirmative misrepresentation*

▮ Nevada Power alleges that Defendants made "active" misrepresentations regarding PCB toxicity as a ground for fraud by misrepresentation. Plaintiff's July 15, 1994 Opposition, at 2. Under Nevada law, the elements of fraud are:

(1) A false representation made by the defendant;

(2) Defendant's knowledge or belief that the representation is false (or insufficient basis for making the representation);

(3) Defendant's intention to induce the plaintiff to act or to refrain from acting in reliance upon the misrepresentation;

(4) Plaintiff's justifiable reliance upon the misrepresentation; and

(5) Damage to the plaintiff resulting from such reliance.

*Bulbman, Inc. v. Nevada Bell,* 108 Nev. 105, 825 P.2d 588, 592 (1992) (citing *Lubbe v. Barba,* 91 Nev. 596, 540 P.2d 115, 117 (1975)). In addition, the plaintiff must prove each element of the fraud claim by clear and convincing evidence. *Bulbman,* 825 P.2d at 592.

■ Defendants contend that Nevada Power's allegations of fraudulent conduct must fail as a matter of law because Nevada Power cannot show the element of reliance on any representations made by Defendants regarding the safety of PCBs. Justifiable reliance upon an alleged misrepresentation is established when a plaintiff shows:

> The false representation must have *played a material and substantial part in leading the plaintiff to adopt his particular course;* and when he was not in any way influenced by it, and would have done the same thing without it for other reasons, his loss is not attributed to the defendant.

*Blanchard v. Blanchard,* 108 Nev. 908, 839 P.2d 1320, 1322 (1992) (emphasis in original) (citations omitted).

■ As the magistrate judge pointed out: "There are two potential sources of Nevada Power's reliance upon Defendants' representations about PCBs—Defendants' written warnings and the oral representations made by the GE and Westinghouse salesmen who sold the electrical equipment at issue." R & R at 11. Reliance on alleged misrepresentations presumes that a plaintiff has actually read or heard those alleged misrepresentations in order to plead a cause of action for deceit. *Mirkin v. Wasserman,* 5 Cal.4th 1082, 23 Cal.Rptr.2d 101, 103, 858 P.2d 568, 570 (1993); *see also Colonial Lincoln–Mercury, Inc. v. Musgrave,* 749 F.2d 1092, 1099 (4th Cir.1984). Defendants maintain that sufficient warnings of PCB hazards were contained in instruction booklets that they shipped with the transformers purchased by Nevada Power. However, in addition to statements of Nevada Power employees that they were not aware of or did not read those booklets, *see, e.g.,* May 12, 1993 Fabbi deposition at 71–73, counsel for Nevada Power expressly conceded the following at oral argument before the magistrate judge:

> Mr. Kim: And certainly, your Honor, I have to stand here and concede that given the summary judgment evidence we cannot make a claim with respect to reliance on the warnings, *because Nevada Power never read them.*

Oct. 25, 1994 Transcript at 140 (emphasis added).

Nevada Power, attempting to sidestep its counsel's concession on the issue of actual reliance on written warnings, now brings forth evidence that Dwight Hoopes, Nevada Power's Chief Engineer from 1955 to 1961 and the person primarily responsible for purchasing the PCB transformers, was in fact familiar with the instruction booklets and the warnings attached to the PCB-containing equipment. Plaintiff's December 9, 1994 Objections at 10; Hoopes deposition at 54. However, as Defendants point out, Hoopes worked for fifteen years as a Westinghouse engineer before going to Nevada Power, and it was during his employment with Westinghouse that he read the written information. Defendants' January 9, 1994 Response at 7; Hoopes deposition at 29–30, 54–55, 58–59. Hoopes also testified that he relied on his personal knowledge of PCBs in making purchasing decisions, rather than on any written representations made by Defendants. *Id.* at 6; Hoopes deposition at 15, 20. Nevada Power, then, cannot support a claim of fraud by *affirmative misrepresentation* based on the Defendants' written warnings because it concedes an element essential to its cause of action.

With respect to any oral representations made by GE and Westinghouse employees, Defendants argue that there could be no affirmative misrepresentations because the evidence indicates that conversations between the parties' representatives only involved the fire-retardant characteristics of PCB fluids rather than their safety. *See* Defendants' Material Facts at ¶ 11. Nevada Power attempts to bypass this contention by stating that any discussion of fire-retardant properties is in effect a discussion of safety. Plaintiff's Material Facts at 3. Plaintiff is not able to provide further evidence regarding any alleged affirmative misrepresentation other than a general allegation by Nevada

Power's former CEO that Defendants indicated that the PCB-containing equipment was "safe to use." September 17, 1993 Ryan deposition at 31. However, the court notes that a representation that sealed equipment containing PCB fluid is safe to use is not equivalent to a representation that the PCB fluids themselves are not toxic. In the absence of any other evidence to support a claim of affirmative misrepresentation through oral communications, the court concludes that the magistrate judge's R & R was correct in finding no fraud by affirmative misrepresentation.

### 2. *Fraudulent concealment*

■ A plaintiff alleging fraud may also ground its case on negative misrepresentations, omissions, or fraudulent concealment. "A defendant may also be found liable for misrepresentation even when the defendant does not make an express misrepresentation, but instead makes a representation which is misleading because it partially suppresses or conceals information." *Blanchard v. Blanchard*, 108 Nev. 908, 839 P.2d 1320, 1322 (1992) (quoting *Epperson v. Roloff*, 102 Nev. 206, 719 P.2d 799, 803 (1986)); *see also Northern Nevada Mobile Home Brokers v. Penrod*, 96 Nev. 394, 610 P.2d 724, 727 (1980) (once party undertakes to give information, he has a duty to speak the whole truth and not by concealments make his statements untruthful and misleading). Indeed, Nevada Power admits that its primary cause of action for fraud is based on Defendants' omissions in not providing more information about PCB hazards rather than the falsity of the actual representations they did make.

■ There are five essential elements to a claim for fraudulent concealment under Nevada law:

(1) The defendant must have concealed or suppressed a material fact;

(2) The defendant must have been under a duty to disclose the fact to the plaintiff;

(3) The defendant must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, that is, he must have concealed or suppressed the fact for the purpose of inducing the plaintiff to act differently than he would if he knew the fact;

(4) The plaintiff must have been unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact;

(5) And, finally, as a result of the concealment or suppression of the fact, the plaintiff must have sustained damages.

Nevada Jury Instruction 9.03. Even in allegations of fraud based on concealment or omission, reliance may be logically shown by proving that, "had the omitted information been disclosed one would have been aware of it and behaved differently." *Mirkin*, 858 P.2d at 574.

■ Defendants argue that Dwight Hoopes, Nevada Power's Chief Engineer from 1955 to 1961, testified that even with the dangers of PCBs known today, he would continue to purchase PCB equipment if it was still available. R & R at 11; Hoopes deposition at 35. In response, Nevada Power offers testimony from Conrad Ryan, Nevada Power's Chief Engineer after Hoopes and later Nevada Power's CEO, that Hoopes would not have purchased the PCB transformers if Hoopes was really aware of the PCB toxicity. Sept. 7, 1993 Ryan deposition at 67. However, speculative testimony about how another might have acted without personal knowledge is not admissible as evidence. Fed.R.Evid. 602; *see also* 2 Wigmore, Evidence § 657(a) at 889 (Chadbourn Rev.1979); Christopher B. Mueller & Laird C. Kirkpatrick, 3 Federal Evidence § 346 at 595 (2nd. ed. 1994). This rule controls whether Ryan testified individually or, as in this case, on behalf of the corporation through a Rule 30(b)(6) deposition. The magistrate judge correctly excluded any assertion by another about how Hoopes might have acted under a different set of facts.

Nevada Power argues that the magistrate judge erred in not finding a genuine issue of material fact on reliance based on Ryan's testimony that Plaintiff, had it known more fully the dangers of PCBs, "wouldn't have used the equipment at all." Sept. 7, 1993 Ryan deposition at 67. Although Ryan, as Chief Engineer after Hoopes, and later as an executive in various positions, had some de-

gree of control over purchasing decisions, the magistrate judge found this simple assertion by Ryan to be speculative and self-serving. R & R at 14.

▆ In *Kloepfer v. Honda Motor Co.*, 898 F.2d 1452 (10th Cir.1990), the court considered the exclusion of a mother's testimony about whether she would not have allowed her 6–year–old son to ride a three-wheeled all-terrain vehicle if there was a proper warning. The Tenth Circuit found that the district court was "well within its discretion in refusing to allow her to make [such] speculative and self-serving statements." *Id.* at 1459; *see also Washington v. Dep't of Transp.*, 8 F.3d 296, 300 (5th Cir.1993) (holding district court properly excluded testimony by co-worker about what he would have done had he seen a vacuum cleaner warning label, on the ground that the statements were too speculative and self-serving). The court finds the reasoning of these cases persuasive. The magistrate judge correctly concluded that Ryan's assertions that Nevada Power would have acted differently but for the Defendants' alleged omissions, with no other supporting facts or evidence, to be insufficient to demonstrate there exists a genuine issue of a material fact on the reliance issue. This is particularly true where, as here, the chief engineer in charge at the time testified directly to the contrary.

▆ Defendants also argue that notwithstanding the question of reliance, Nevada Power's claim must fail as a matter of law because Defendants had no duty to disclose in the first place. Under Nevada law, the general rule is that "an action in deceit will not lie for nondisclosure." *Epperson*, 719 P.2d at 803. However, Nevada Power maintains that Defendants had a duty to disclose based on a "special relationship" between the

parties, as set forth in *Mackintosh v. Matthews & Co.*, 109 Nev. 628, 855 P.2d 549, 553 (1993).³

In *Mackintosh*, the Nevada Supreme Court stated that a special relationship may exist where "one party interposes confidence in the other because of that person's position and the other party knows of this confidence." *Id.* 855 P.2d at 553 (quoting *Mancini v. Gorick*, 41 Ohio App.3d 373, 536 N.E.2d 8, 9 (1987)). However, in *Mackintosh*, the court found a special relationship between a home purchaser and the vendor (a bank which had foreclosed on the property) because the vendor was also going to be the financier in the transaction. *Id.* 855 P.2d at 554. In other words, the "confidence" giving rise to the special relationship emanated from a role separate and additional to that as vendor. This was analogous to the Ohio case quoted by the Nevada Supreme Court. *Mancini* also involved the purchase of a house, with the Ohio court finding a special relationship, and thus a duty to disclose certain defects in the structure, because the seller was also the architect/engineer and general contractor. 536 N.E.2d at 9–10.

To support the existence of a special relationship with Defendants, Nevada Power points to Defendants' "market and professional position as chemical equipment manufacturers with discretely specialized knowledge in regard to PCBs." Plaintiff's Opposition at 20. However, while the court finds it reasonable that Defendants would be knowledgeable about PCBs as manufacturers of equipment containing such fluids, Nevada Power's characterization of itself as an ignorant and inexperienced utility company totally dependent upon the manufacturers is something less than candid. Nevada Power's position as a major utility company encompassed: (1) staff such as Dwight Hoopes,

---

**3.** In Nevada a "special relationship" has been found in several situations, such as: a real estate agent/vendor-buyer relationship, where the agent has superior knowledge, *Epperson*, 719 P.2d 799, *Northern Nevada Mobile Home Brokers v. Penrod*, 96 Nev. 394, 610 P.2d 724 (1980), *Sanguinetti v. Strecker*, 94 Nev. 200, 577 P.2d 404 (1978); an insurer-insured relationship, *Ainsworth v. Combined Ins. Co. of Am.*, 105 Nev. 237, 774 P.2d 1003 (1989); a trustee-beneficiary relationship, *Riley v. Rockwell*, 103 Nev. 698, 747 P.2d 903

(1987); and an attorney-client relationship, *Foley v. Morse & Mowbray*, 109 Nev. 116, 848 P.2d 519 (1993).

However, as discussed more fully below, this court is not convinced that any such "special relationship" existed between the parties here. This was nothing more than a straightforward commercial transaction between two corporations for the purchase of electrical equipment. The relationship here, such as it was, was simply that of vendor-vendee.

with fifteen years experience as a Westinghouse engineer; (2) scientific and industry literature on PCB hazards publicly available while Nevada Power continued to purchase PCB-containing transformers; and (3) notices being published in the Federal Register in 1972 and 1973 concerning potential regulatory action on PCBs by the U.S. Food and Drug Administration as well as the Environmental Protection Agency. Nevada Power's position is clearly distinguishable from that of the 'innocent' homebuyers in *Mackintosh* and *Mancini*. Furthermore, whereas the sellers in those two cases took on additional roles as financier and architect/engineer/contractor, the Defendants' roles cannot be seen as anything but as vendors. The court finds, as did the magistrate judge, that Defendants' relationship with Nevada Power was a " 'straightforward vendor-vendee relationship', which, as a matter of law, creates no fraud-based duty to disclose." R & R at 17; *see supra*, n. 2.

The existence of a duty to disclose is an essential element of fraudulent concealment. *See* Nevada Jury Instruction, 9.03. Actual reliance on an alleged misrepresentation, or a sufficient showing that the fraud victim would have acted differently if there had not been fraudulent concealment, is also a required element. *Bulbman*, 825 P.2d at 592; *Blanchard*, 839 P.2d at 1322. Because Nevada Power, as a matter of law, cannot show support for an element that is necessary to its cause of action, it cannot withstand Defendants' Motion for Summary Judgment on the fraud claims. *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552; *Citadel Holding Corp.*, 26 F.3d at 964; *Blue Ocean*, 754 F.Supp. at 1455.

### B. Fraud by Nondisclosure

Nevada Power's claim of fraud by nondisclosure essentially parallels its claim of fraud by omission or fraudulent concealment. Fraud by nondisclosure also requires a threshold duty to disclose: "It is axiomatic that an individual may only be subject to liability for nondisclosure when [he is] 'under a duty to the other to exercise reasonable care to disclose the matter in question.'" *Does I Through VI v. KTNV–Channel 13,*

863 F.Supp. 1259, 1265 (D.Nev.1994) (quoting Restatement (Second) of Torts § 551 (1977)); *see also Cohen v. Wedbush, Noble, Cooke, Inc.*, 841 F.2d 282, 287 (9th Cir.1988) ("In order for a mere omission to constitute actionable fraud, a plaintiff must first demonstrate that the defendant had a duty to disclose the fact at issue."). As discussed above, Nevada Power cannot, as a matter of law, show Defendants had a duty to disclose.

Accordingly, the court GRANTS Defendants GE and Westinghouse's Motion for Summary Judgment and DISMISSES with prejudice Count I (fraud by misrepresentation) and Count IV (fraud by nondisclosure) with respect to Defendants GE and Westinghouse.

## II. DEFENDANT MONSANTO'S MOTION FOR SUMMARY JUDGMENT

### A. Fraud by Misrepresentation

The elements of fraud under Nevada law are set forth in Part I(A) above. The court will not repeat them here.

Monsanto is in a slightly different position than GE or Westinghouse in that Monsanto states that it never made *any* direct representations to Nevada Power. Monsanto contends that Nevada Power cannot produce sufficient evidence to show that Plaintiff (1) had knowledge of any representations about PCB hazards made by Monsanto at the time it purchased equipment from GE and Westinghouse; (2) justifiably relied on any such representations; or (3) suffered any injury resulting from such reliance. There is no genuine issue of material fact if a party opposing the summary judgment motion fails to offer evidence sufficient to establish the existence of an element essential to that party's case. *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552; *Citadel Holding*, 26 F.3d at 964. Monsanto argues that it is therefore entitled to judgment as a matter of law since Nevada Power cannot establish all the required elements of fraud.

Monsanto supported its assertion that it made no direct representations concerning PCB hazards to Nevada Power with testimony taken pursuant to Fed.R.Civ.P.

30(b)(6). In producing representatives for a Rule 30(b)(6) deposition, a corporation must prepare them to give "complete, knowledgeable and binding answers." *Marker v. Union Fidelity Life Ins. Co.*, 125 F.R.D. 121, 126 (M.D.N.C.1989). Through the depositions of two of its former long-time employees, Nevada Power admitted that it had no direct oral or written communications with Monsanto at the time it purchased the GE or Westinghouse equipment. *See* 30(b)(6) Ryan Deposition, Sept. 17, 1993, attached as Exhibit "E" to Monsanto's Motion, at 5–33; Grant Deposition, Nov. 2, 1993, attached as Exhibit "D" to Monsanto's Motion, at 10–32. Nevada Power also admitted it had no knowledge of any statements by Monsanto regarding PCBs. *Id.* Furthermore, Nevada Power admitted it did not rely on any statement Monsanto may have made to a third party or through any advertising or written materials when it purchased the equipment, nor did Nevada Power rely on any oral or written statements of Monsanto in connection with any alleged damages. *Id.* By virtue of this evidence, Monsanto has carried its burden in establishing that Nevada Power cannot demonstrate all the required elements of fraudulent misrepresentation.

Nevada Power must now set forth specific facts beyond mere allegations or denials. *See Lujan*, 497 U.S. at 884, 110 S.Ct. at 3186. In response to Monsanto's claim that no representations at all were made to Plaintiff, Nevada Power offers only the bald statement that it "did in fact rely on statements made by Monsanto to General Electric and Westinghouse, as well as to the Federal Government and its agencies, when it made its purchase of the electrical equipment at issue." Plaintiff's Objections at 3. However, Nevada Power fails to set forth any specific facts of direct misrepresentation beyond that mere allegation.

■ Instead, Nevada Power argues that alleged misrepresentations made by GE and Westinghouse should be imputed to Monsanto because the two companies were acting as Monsanto's apparent agents. Under Nevada law, an apparent agency is created when there is "authority which a principal holds his agent out as possessing or permits him to exercise or to represent himself as possessing, under such circumstances as to estop the principal from denying its existence." *Does I Through VI v. KTNV–Channel 13*, 863 F.Supp. 1259, 1263–64 (D.Nev. 1994) (quoting *Dixon v. Thatcher*, 103 Nev. 414, 742 P.2d 1029, 1031 (1987)). In addition, "[a]bsent a showing of third party reliance on some conduct of the alleged principal, there can be no apparent agency." *Hunter Mining Laboratories, Inc. v. Management Assistance, Inc.*, 104 Nev. 568, 763 P.2d 350, 353 (1988) (citing *Ellis v. Nelson*, 68 Nev. 410, 233 P.2d 1072, 1076 (1951)).

■ An agency relationship also requires some degree of control by the principal over its agent. *Hunter Mining*, 763 P.2d at 352. The Nevada Supreme Court found no actual or apparent agency relationship under the circumstances in *Hunter Mining. Id.* The court held that a manufacturer of computer products was not liable for its distributors' breaches since the manufacturer did not control the operative details of the dealers' business nor did it retain title to the goods or set the prices for the end customers. *Id.* 763 P.2d at 352. The evidence established only a relationship of seller and buyer for which there was no liability on the manufacturer for the distributors' actions.

In contrast, in *Shaw v. Delta Airlines, Inc.*, 798 F.Supp. 1453 (D.Nev.1992), the district court found an apparent agency relationship between a major airline and its associated regional carrier. There was uncontroverted evidence that Delta possessed the right to control the printing and distribution of SkyWest timetables, as well as to assign the flight numbers. *Id.* at 1458. In addition, there was evidence that Delta effectively managed to "equate SkyWest with Delta in the minds of the travelling public" through national advertising. *Id.*

However, in the present case, Nevada Power offers no direct evidence that Monsanto exerted any degree of control over GE or Westinghouse or that the relationship was anything but that of seller and buyer. Nevertheless, Nevada Power claims there are several bases for finding an apparent agency relationship between Monsanto and Co–Defendants GE and Westinghouse: (1) Monsan-

to's name and logo on Pyranol and Inerteen[4] labels; (2) letters sent by GE and Westinghouse in 1970 to equipment purchasers with attached information from Monsanto; (3) information in GE and Westinghouse brochures advising purchasers of Monsanto's disposal service for PCB fluids; and (4) indemnity agreements between Monsanto and the equipment manufacturers. These assertions will be examined below.

### 1. *Pyranol and Inerteen labels*

Nevada Power contends that the Pyranol (GE) and Inerteen (Westinghouse) labels bearing Monsanto's name and logo, as well as information about Monsanto's disposal services, created an apparent agency relationship. The magistrate judge found the labels inadmissible as evidence because they were merely attached as exhibits without supporting information and not "authenticated by affidavits or declarations of persons with personal knowledge through whom they could be introduced at trial." R & R at 11 (quoting *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir.1982), *cert. denied*, 460 U.S. 1085, 103 S.Ct. 1777, 76 L.Ed.2d 349 (1983)). Nevada Power responds that a Monsanto expert did identify the labels as Monsanto's. *See* Plaintiff's Objections, Jan. 19, 1994, at 5 and Deposition of Charles Boyd Shaffer, attached as Exhibit "3" to Plaintiff's Objections, at 92. However, Nevada Power offers no specific facts that these labels were in fact ever attached to any equipment purchased by Plaintiff. Nor does Nevada Power claim that it ever purchased any drums of PCB fluids with these labels, distinctly marked "54 U.S. Gallons" and "674 Lbs." Exhibits "1" and "2" to Plaintiff's Objections. Moreover, Nevada Power's Rule 30(b)(6) admissions that it had no knowledge of any Monsanto brochure or label on PCB fluids undermine any assertion to the contrary. *See* Ryan 30(b)(6) Deposition, Sept. 17, 1993, attached as Exhibit "G" to Monsanto's Reply, at 32; Grant Deposition, Nov. 2, 1993, attached as Exhibit "H", at 27. Within the contextual facts of the case, Plaintiff's argument is implausible. *See Bator*, 39 F.3d at 1026. The court finds that Nevada Power has not offered sufficient evidence on this point to show a genuine issue of material fact.

### 2. *GE and Westinghouse letters of 1970*

Nevada Power also contends there is a basis for finding an apparent agency relationship in "open" letters drafted by GE and Westinghouse apprising customers of the hazards of the PCB fluids contained in their equipment. The letters named Monsanto as the sole supplier of the PCB fluids and referred to a copy of a letter from Monsanto to the equipment manufacturers that was to be attached. Exhibit "4" to Plaintiff's Objections. However, Nevada Power sets forth no evidence that such a letter was ever received or read by its employees. In fact, in attempting to argue both sides of the question, Nevada Power states:

> GE and Westinghouse infer they sent Nevada Power letters in 1970 warning of problems with askerel. [citation omitted] Not surprisingly, there is no evidence the so-called letters were ever actually sent to or, even more significantly, received by Nevada Power.

Plaintiff's Response at 7. Rather than offer any evidence that might contradict its own position, Nevada Power requests this court to draw a "reasonable" inference that it did in fact receive and read these letters. However, while Plaintiff "is entitled to have inferences drawn from the evidence in the light most favorable to it," this court will not labor to draw inferences while Plaintiff sits on the fence. *Nevada Power Co. v. Monsanto Co.*, 955 F.2d 1304, 1308 (9th Cir.1992). Furthermore, Nevada Power offers no specific facts that it actually relied on any representations of agency when it purchased the equipment from GE and Westinghouse. *See Hunter Mining*, 763 P.2d at 352–53. Because Nevada Power has not offered more than a "scintilla of evidence," it cannot defeat the motion for summary judgment. *Liberty Lobby*, 477 U.S. at 252, 106 S.Ct. at 2512.

---

**4.** Pyranol and Inerteen are the respective trade names used by GE and Westinghouse for Monsanto's PCB fluid, askerel.

**1420**

### 3. *Westinghouse instruction booklets*

Nevada Power claims that it relied on representations made in the Westinghouse instruction booklet which advised customers of Monsanto's disposal service for used Inerteen. As with the other assertions, Plaintiff simply makes unsupported allegations. However, memoranda and argument alone are not evidence and do not create a factual dispute capable of defeating an otherwise valid motion for summary judgment. *British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 952 (9th Cir.1978), *cert. denied*, 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979); *Hawaiian Navigable Waters Preservation Society v. Hawaii*, 823 F.Supp. 766, 769 (D.Haw.1993), *aff'd*, 42 F.3d 1185 (9th Cir. 1994). "[A] party cannot manufacture a genuine issue of material fact merely by making assertions in its legal memoranda." *S.A. Empresa De Viacao Aerea Rio Grandense (Varig Airlines) v. Walter Kidde & Co., Inc.*, 690 F.2d 1235, 1238 (9th Cir.1982). Nevada Power offers no significant probative evidence to refute the testimony of its own employees that it did not know Monsanto was the producer of the PCB fluids at the time it purchased the PCB-containing equipment. Ryan Deposition, Sept. 2, 1992, Vol. II, attached as Exhibit "I" to Monsanto's Reply, at 29–30. Because Nevada Power's position is implausible when viewed against the contextual facts, it is not entitled to any inferences to support a finding of a genuine issue of material fact in this matter.

### 4. *Indemnity agreements*

Finally, Nevada Power asserts there was an apparent agency relationship based upon indemnity agreements executed between Monsanto and GE and Westinghouse. Again, without any showing that it could further support this allegation at trial, Nevada Power merely argues that the existence of the agreements raises a reasonable inference that the equipment manufacturers were the apparent agents of Monsanto. Yet Nevada Power still makes no showing that it actually relied on any agency relationship when it purchased the equipment. "Absent a showing of third party reliance on some conduct of the alleged principal, there can be no apparent agency." *Hunter Mining*, 763 P.2d at 352–53. Thus, based on the mere existence of the agreements, Nevada Power cannot meet its burden in establishing an apparent agency relationship.

Nevada Power has failed to sufficiently support its allegations made in opposing Monsanto's motion for summary judgment on the claim of fraud by misrepresentation. Plaintiff instead argues it is due reasonable inferences in its assertions. However, inferences can only be drawn if they are reasonable as viewed against the background and contextual circumstances. *T.W. Elec.*, 809 F.2d at 631; *Elliot Megdal & Associates v. Hawaii Planing Mill, Ltd.*, 814 F.Supp. 898, 902 (D.Haw.1993). Within the facts of this case, Plaintiff's inferences are not reasonable.

The court finds that Nevada Power cannot succeed in its claim on a theory of direct misrepresentation because it cannot establish all the required elements of fraud. Nor can Plaintiff succeed on a theory of apparent agency because it offers only unsupported allegations. The court therefore ADOPTS the magistrate judge's R & R on Nevada Power's fraud by misrepresentation claim.

### B. Fraud by Nondisclosure

It is well-settled under Nevada law that suppression or nondisclosure of a material fact, which a party is bound in good faith to disclose, is equivalent to a false representation. *Villalon v. Bowen*, 70 Nev. 456, 273 P.2d 409, 414 (1954); *Midwest Supply, Inc. v. Waters*, 89 Nev. 210, 510 P.2d 876, 878 (1973). Nevada Power asserts that Monsanto committed a fraudulent act by failing to disclose material facts concerning the hazards of PCBs. The court has stated the applicable law in Part I regarding fraud by nondisclosure or intentional concealment, and will not reiterate it here.

In the instant case, the testimony taken at the Rule 30(b)(6) depositions clearly establishes that there was no direct business relationship between Monsanto and Nevada Power. Nevada Power did not purchase any equipment from Monsanto, nor did it have any direct communications or other business

dealings with Monsanto. *See* 30(b)(6) Ryan Deposition, Sept. 17, 1993, attached as Exhibit "E" to Monsanto's Motion, at 5–6; Grant Deposition, Nov. 2, 1993, attached as Exhibit "D" to Monsanto's Motion, at 5–6, 9–11. Nevada Power offers no evidence whatsoever that would enable a reasonable jury to find the required relationship between Nevada Power and Monsanto to create a duty to disclose.

Nevada Power also argues that Monsanto is liable for fraudulent nondisclosure because Monsanto made misleading representations by partially suppressing or concealing information. *See Epperson v. Roloff*, 102 Nev. 206, 719 P.2d 799, 803 (1986). Nevada Power bases this allegation on the same arguments made under its assertion of apparent agency: that Monsanto made misleading representations through the Pyranol and Inerteen labels, the "open" letters of GE and Westinghouse, and the information in the instruction booklets regarding Monsanto's disposal service. The court rejects these arguments for the same reasons discussed in the preceding section.

In sum, Nevada Power offers no probative evidence to support Monsanto's duty to disclose. Without establishing Defendants' duty to disclose, Nevada Power cannot succeed in its fraudulent nondisclosure claim against Monsanto. *See Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552. Nor can Nevada Power expect to convince a reasonable jury that Monsanto made representations to Nevada Power that concealed information based only on its assertions that Monsanto is liable through the actions of its "agents." Therefore, the court ADOPTS the Magistrate Judge's R & R on the fraud by nondisclosure claim.

Accordingly, the court GRANTS Defendant Monsanto's Motion for Summary Judgment and Dismisses with prejudice Count I (fraud by misrepresentation) and Count IV (fraud by nondisclosure) with respect to Defendant Monsanto.

### III. DEFENDANTS' JOINT MOTION ON STATUTE OF LIMITATION GROUNDS

The court has disposed of both Count I (fraud by misrepresentation) and Count IV (fraud by nondisclosure) in favor of all Defendants. This ruling effectively disposes of the action. Therefore, the court declines to address as unnecessary, Defendants' Motion for Summary Judgment on Statute of Limitation grounds.

### CONCLUSION

Based upon the relevant facts and foregoing reasons, the court ADOPTS the magistrate judge's Report and Recommendation on Defendants GE and Westinghouse's Motion for Summary Judgment. Accordingly, the court GRANTS Defendants' Motion for Summary Judgment and DISMISSES with prejudice Count I (fraud by misrepresentation) and Count IV (fraud by nondisclosure) with respect to Defendants GE and Westinghouse.

The court also ADOPTS the magistrate judge's Report and Recommendation on Defendant Monsanto's Motion for Summary Judgment. Accordingly, the court GRANTS Defendant Monsanto's Motion for Summary Judgment and DISMISSES with prejudice Count I and Count IV with respect to Monsanto.

IT IS SO ORDERED.