JOHN J. SERVAITES, Appellant, v. PAUL W.
LOWDEN, Respondent.

No. 13912

March 31, 1983

660 P.2d 1008

[Rehearing denied June 13, 1983]

*Gladstone & Stark,* Las Vegas, for Appellant.

*Raggio, Wooster & Lindell,* and *Richard F. Cornell,* Reno, for Respondent.

## OPINION

*Per Curiam:*

Respondent Lowden seeks to enforce a promissory note that appellant Servaites signed as guarantor. Servaites contends on appeal that numerous actions by Lowden operated to discharge him as guarantor. The district court awarded summary judgment to Lowden on the basis of the guaranty contract. As we believe that the state of the record before the district court made summary judgment improper, we reverse and remand for a full trial on the merits.

## THE FACTS

In a promissory note dated October 26, 1976, Joseph O'Rayeh promised to pay respondent Lowden $11,500 plus interest on or before January 1, 1977, in consideration of a prior loan. O'Rayeh also promised to pay attorney's fees in any action instituted to enforce the note. Appellant Servaites signed the note expressly as a guarantor of payment, in consideration of a separate $35,000 loan to him from Lowden.

The promissory note was made pursuant to a written agreement between Servaites and Lowden also dated October 26, 1976. In addition to noting the $11,500 loan to O'Rayeh that Servaites had guaranteed to repay, the agreement included the following:

> 1. To "fully collateralize" both the $11,500 note and a separate $35,000 note evidencing the loan from Lowden to Servaites, Servaites pledged as security 37 percent of the issued stock of Hi-Tide, Inc., a Nevada corporation (of which Servaites was President and majority shareholder).
>
> 2. Herbert Waldman, an attorney, would hold the stock certificates and "executed stock powers." He would

transfer the certificates to Lowden on request following a default, and would return them to Servaites if the latter did not default.

3. Servaites agreed to assign to Lowden as additional collateral a $50,000 promissory note.

4. On payment of the $11,500 and $35,000 notes on or before January 1, 1977, Lowden would direct Waldman to return all security to Servaites.

On February 17, 1977, Lowden requested by letter that Waldman transfer the Hi-Tide stock to him because of Servaites' default on the $35,000 note. On February 18, Waldman by letter notified Servaites that he was going to transfer the shares to Lowden. Lowden now swears in the action at bar that he has never been in personal possession of any Hi-Tide shares; however, in an agreement with Hi-Tide, Inc., dated April 11, 1977, Lowden acknowledged ownership of 25 percent of the corporation's outstanding stock.

In the April 11 agreement, Hi-Tide, Inc. (by Joseph O'Rayeh, Vice President)

> assumed an obligation to repay to Lowden the sum of $35,000 loaned to John Servaitis [sic] on October 26, 1976, to be loaned to Corporation by Servaitis [sic] for corporate purposes, and the sum of $11,500 loaned to Joseph O'Rayeh on September 19, 1975, and renewed on October 26, 1976.

Lowden also "acknowledged" receiving the 25 percent stock interest in Hi-Tide "in consideration of" having loaned the $35,000 to Servaites, and agreed to sell the stock back if the $35,000 and $11,500 loans were repaid along with certain "additional consideration." Servaites was not a party to this agreement.

On July 19, 1977, Lowden and Hi-Tide, Inc. (by Joseph O'Rayeh) entered into an agreement modifying the April 11 agreement. Among other things, the July 19 agreement extended the times for payment by Hi-Tide and deemed Hi-Tide to be the owner of the shares previously held by Lowden so long as Hi-Tide was not in default. As with the April 11 agreement, Servaites was not a party.

Hi-Tide, Inc. subsequently filed a Chapter XI proceeding and was discharged as a bankrupt. Although Lowden presented several claims in the bankruptcy proceeding, he stipulated to the disallowance of a $12,937.50 claim that he later contended represented the $11,500 debt (plus interest) of O'Rayeh and Servaites.

On June 10, 1980, Lowden demanded that Servaites pay him $11,500 plus interest as guarantor of O'Rayeh's October 26, 1976 promissory note pursuant to NRS 104.3416. He then filed a complaint against O'Rayeh and Servaites seeking payment of the debt, stating that he had not received any money from either O'Rayeh or Servaites in satisfaction of the note. O'Rayeh defaulted, and a default judgment for the entire amount due was entered against him on August 13, 1980. Lowden subsequently moved for summary judgment against Servaites. Asserting that his obligation had been discharged, Servaites cross-moved for summary judgment against Lowden. Lowden filed several affidavits and documents in support of his motion. Servaites did not file any affidavits; rather, he relied on the documents and answers to interrogatories that Lowden had filed.

The district court granted Lowden's motion for summary judgment. This appeal followed.

## THE GRANT OF SUMMARY JUDGMENT WAS IMPROPER

The mere filing of cross-motions for summary judgment does not relieve the trial court of its obligation to determine whether any genuine issue of material fact remains for trial. Cheqer, Inc. v. Painters & Decorators, 98 Nev. 609, 655 P.2d 996 (1982). See Midland Ins. v. Yanke Plumbing & Heating, 99 Nev. 66, 657 P.2d 1152 (1983); Young Electric Sign Co. v. State, Dept. Hwys., 98 Nev. 536, 654 P.2d 1028 (1982); Molino v. Asher, 96 Nev. 814, 817 n.2, 618 P.2d 878, 879 n.2 (1980). While cross-motions for summary judgment on the same legal theories and the same material facts may be indicative of the nonexistence of a factual dispute, see Schlytter v. Baker, 580 F.2d 848, 850 (5th Cir. 1978), the trial court must rule separately on each party's motion, and if a genuine issue of material fact remains, both motions must be denied. See Midland Ins. v. Yanke Plumbing & Heating, supra; Cheqer v. Painters & Decorators, supra. Accord Securities & Exch. Comm'n v. Am. Commodity Exch., 546 F.2d 1361, 1365 (10th Cir. 1976). See also Heyman v. Commerce & Industry Ins. Co., 524 F.2d 1317, 1320 (2d Cir. 1975); Eby v. Reb Realty, Inc., 495 F.2d 646, 649 n.4 (9th Cir. 1974).

A court should exercise great care in granting summary judgment; a litigant has the right to a trial where the slightest doubt

as to the facts exists. Nehls v. Leonard, 97 Nev. 325, 328, 630 P.2d 258, 260 (1981). In evaluating the propriety of a grant of summary judgment, we will review the evidence in the light most favorable to the party against whom summary judgment was rendered. *Id.;* McDermond v. Siemens, 96 Nev. 226, 607 P.2d 108 (1980).

The record in the case at bar reveals that the district court overlooked certain conflicts in the evidence. For example, Servaites argued that Lowden had accepted and retained the security that had been given for the $11,500 and $35,000 notes in complete satisfaction of the debts, thus extinguishing the obligation to which his guaranty was collateral. Where a secured creditor following default and repossession chooses to accept the collateral in complete satisfaction of the debt under NRS 104.9505(2),[1] the creditor foregoes the right to a deficiency judgment against the principal debtor. White & Summers, Uniform Commercial Code § 26-8 at 1104-08 (2d ed. 1980). However, we need not decide whether a creditor's acceptance and retention of the collateral discharges the wholly independent obligation of a guarantor, *see* Thomas v. Valley Bank of Nevada, 97 Nev. 320, 629 P.2d 1205 (1981), as the materials that Lowden placed before the district court did not establish whether or not he had accepted and retained the collateral.

Lowden by affidavit swore that he has never been in "personal possession" of any Hi-Tide shares. In the April 11 agreement with Hi-Tide, however, Lowden acknowledged that he had "received" a 25 percent interest in Hi-Tide "in consideration of" having loaned $35,000 to Servaites, and that he was the "owner" of those shares. Moreover, the letters to and from

---

[1]NRS 104.9505(2) provides as follows:

In any other case involving consumer goods or any other collateral a secured party in possession may, after default, propose to retain the collateral in satisfaction of the obligation. Written notice of such proposal shall be sent to the debtor if he has not signed after default a statement renouncing or modifying his rights under this subsection. In the case of consumer goods no other notice need be given. In other cases notice shall be sent to any other secured party from whom the secured party has received (before sending his notice to the debtor or before the debtor's renunciation of his rights) written notice of a claim of an interest in the collateral. If the secured party receives objection in writing from a person entitled to receive notification within 21 days after the notice was sent, the secured party must dispose of the collateral under NRS 104.9504. In the absence of such written objection the secured party may retain the collateral in satisfaction of the debtor's obligation.

Herbert Waldman indicate that Lowden received the Hi-Tide stock that Waldman had been holding as security for the two promissory notes. Lowden's sworn statement that he never had "personal possession" of any Hi-Tide shares certainly does not conclusively establish that he had not received ownership and control of the stock. There is a disparity between the 37 percent of "outstanding" Hi-Tide stock given as collateral and the "25 percent of 100 percent of the shares" allegedly received by Lowden, but the disparity could have been caused by differences in definition or an increase in the number of issued shares. In light of this material factual dispute, the district court erred in granting summary judgment for Lowden. We therefore reverse and remand for a full trial on the merits.

Servaites contends that even if Lowden had not executed on the collateral, summary judgment should have been entered for Servaites on his other defenses. He argues that the April 11 agreement as modified by the July 19 agreement constituted a release or suspension of Lowden's rights as against O'Rayeh, the maker of the subject note, and that the release or suspension was accomplished without Servaites' consent, thus discharging him as guarantor under NRS 104.3606.[2] See Lee Federal Credit Union v. Gussie, 542 F.2d 887 (4th Cir. 1976) (applying Virginia law); Citizens State Bank v. Beermann Bros. Dehy., 198 N.W.2d 458 (Neb. 1972); Bank of Waynesboro v. Ghosh, 576 S.W.2d 759 (Tenn. 1979). Servaites also contends that the April 11 and July 19 agreements constituted a novation of the original note without his consent, absolving him of liability on the note. See Williams v. Crusader Disc. Corp., 75 Nev. 67, 334 P.2d 843 (1959).

The April 11 agreement states that Hi-Tide, Inc. "has assumed an obligation to repay to Lowden . . . ." The use of the word "assumed" could be construed as a release, suspension, or novation of Lowden's rights as against O'Rayeh. Lowden argues that he intended the later agreements only to add a second guarantor for the original obligation. Where, as here, the crucial factual dispute concerns characterization of a party's conduct, which in turn involves elusive questions of intent and motive, summary judgment is inappropriate. Feminist Women's Health Center, Inc. v. Mohammad, 586 F.2d 530,

---

[2]NRS 104.3606 provides in relevant part as follows:

1. The holder discharges any party to the instrument to the extent that without such party's consent the holder:

(a) Without express reservation of rights releases or agrees not to sue any person against whom the party has to the knowledge of the holder a right of recourse or agrees to suspend the right to enforce against such person . . . .

548 (5th Cir. 1978), *cert. denied,* 444 U.S. 924 (1979). *See* Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 473 (1962). *See also* Admiralty Funds v. Tabor, 677 F.2d 1297, 1298-99 (9th Cir. 1982); Prochaska v. Marcoux, 632 F.2d 848, 851 (10th Cir. 1980), *cert. denied,* 451 U.S. 984 (1981). On the record in the case at bar, summary judgment was not proper on the issues concerning the effect of the April 11 and July 19 agreements on Servaites' contract of guaranty.

Servaites is correct in contending that the district court erred in holding that he was bound by the finding of the bankruptcy court that Hi-Tide was not obligated to Lowden for the $11,500 debt under the April 11 and July 19 agreements. Servaites was not a party to the bankruptcy proceeding, nor did he litigate the question, which was settled by stipulation between Lowden and Hi-Tide. The doctrines of *res judicata* and collateral estoppel therefore do not apply. *See* Parklane Hosiery Co. v. Shore, 439 U.S. 322 (1979); Blonder-Tongue Laboratories, Inc. v. University Foundation, 402 U.S. 313 (1971). *See also* Bernhard v. Bank of America Nat. Trust & Sav. Ass'n, 122 P.2d 892, 895 (Cal. 1942).

In response to respondent Lowden's request for attorney's fees on appeal, we note that where a contract provision for payment of legal costs relates only to proceedings to collect on the note, the guarantor is not liable for attorney's fees incurred in suits to enforce the guaranty agreement unless there is an express provision for such liability. Securities Investment Co. v. Donnelley, 89 Nev. 341, 349, 513 P.2d 1238, 1243 (1973). *See* Peoples Bank & Trust Co. v. Warner, 535 P.2d 1132, 1135 (Colo.App. 1975) (guaranty contract may be narrower than contract between creditor and principal debtor, and where guaranty contract does not provide for costs of collection or attorney's fees, judgment for attorney's fees improper). As the provision for attorney's fees in O'Rayeh's $11,500 note relates only to actions ''to enforce collection of this note'' and refers in the singular to the ''undersigned,'' and the entirely separate guaranty clause makes no provision for attorney's fees, Lowden is not entitled to such fees from Servaites.[3]

---

[3] Although Servaites also requests attorney's fees, attorney's fees may not be awarded in the absence of a statute, rule, or contract provision permitting such an award. Locken v. Locken, 98 Nev. 369, 650 P.2d 803 (1982); Consumers League of Nevada v. Southwest Gas, 94 Nev. 153, 576 P.2d 737 (1978).

As the district court erred in granting summary judgment and holding that Servaites was barred from contesting the bankruptcy court's findings, we reverse and remand for a full trial on the merits.

MANOUKIAN, C. J., SPRINGER, MOWBRAY, and STEFFEN, JJ., and ZENOFF, SR. J.,[4] concur.