DAVID R. EPPERSON AND SHIRLEY A. EPPERSON, APPELLANTS, *v.* HENRY ROLOFF, MYLAN BARIN ROLOFF AND RUTH K. LESSER, RESPONDENTS.

No. 15900

May 28, 1986                    719 P.2d 799

*Charles A. Price,* Incline Village, for Appellants.

*Gene R. Barbagelata,* Reno, for Respondents.

## OPINION

*Per Curiam:*

This is an action for breach of contract, fraud and rescission arising out of the sale of a home in Incline Village, Nevada. The district court awarded summary judgment to respondents, the defendants below. This appeal followed. Because appellants have apparently abandoned their rescission claim, we affirm the judgment to that extent. With respect to the other claims, however, material issues of fact remain to be tried, and summary judgment was therefore improper. Accordingly, we reverse the judgment and remand the matter for trial.

### I. *The Facts*

In evaluating the propriety of a summary judgment, we review the evidence in the light most favorable to the party against whom judgment was rendered. Servaites v. Lowden, 99 Nev. 240, 660 P.2d 1008 (1983). So viewed, the record in this case reveals the following facts.

In 1981, appellants David and Shirley Epperson decided to sell their home in California and move to Lake Tahoe to retire. They contacted Fran Mercer, a local real estate agent with whom they had previously dealt, and asked her to help them find a home at the lake. Mrs. Mercer saw a listing on a home located in Incline Village. She contacted the listing agent, Michael Alexander, and arranged a tour of the home.

The Eppersons saw the home for the first time in the summer of 1981, in the company of Mrs. Mercer and Mr. Alexander. Near the beginning of their tour, Alexander told the Eppersons that the home had a solar heating system and sought to explain the control panel which allegedly operated the system. At some point during the tour, the Eppersons were shown a brochure by Alexander which stated that the home had "forced air gas/solar implecations [sic]." According to Mr. Epperson, Alexander stated that the "solar really saves on your gas bill."

The Eppersons concluded their tour and decided to make an offer on the home. The contract between the Eppersons and the seller, respondent Mylan Roloff, was entered into in July, 1981.[1] By an addendum to the contract, the parties agreed that all "mechanical equipment" at the home was to be in "good operating order" at the close of escrow.

The Eppersons moved into the home in late September, about one week before the close of escrow. At some point after they moved in, Mr. Epperson noticed water stains on the drywall in the garage. It rained within approximately a week after escrow closed, and Mr. Epperson noticed that water was leaking into the garage. He climbed into the attic over the garage and found the source of the leak. He discovered that the "solar panel" on the roof was actually a part of the roof and that he could see daylight through numerous holes in the panel. Moreover, the panel consisted of corrugated metal which had simply been painted black.

For the first time, Mr. Epperson spoke directly with Mrs. Roloff. He called her to complain about the operation of the "solar heating system." According to Epperson, Mrs. Roloff expressed surprise at the problem and claimed that the heating system had "worked great" while she had lived in the house. During her subsequent deposition, however, Mrs. Roloff conceded that she had never used the system. According to her, there had been some delay in completing the system, additional work had been done, and she had thereafter been told that the system

---

[1]Respondent Henry Roloff, Mylan's husband, was not a party to the contract. The record fails to reflect whether he had an interest in the property at the time the contract was signed. It is unclear why he is a party to this action. Equally unclear is the status of respondent Ruth Lesser. The parties have not explained who she is or what she is alleged to have done.

was operational. Mrs. Roloff also admitted that she had told Mr. Alexander, when the home was listed for sale, that it had a "solar feature," which she described to him as "a solar storage area for auxiliary heating." She was not asked to explain what a "solar implecation" might be.

The Eppersons' complaint set forth three claims for relief against the respondents. First, it alleged that respondents had breached that portion of the purchase agreement relating to the operation of mechanical equipment. Second, it alleged that respondents were guilty of fraud. Finally, the Eppersons sought to rescind the purchase agreement on the theory that there had been a failure of consideration.

Respondents answered the complaint and moved for summary judgment. In granting summary judgment, the district court concluded that there had been no breach of the purchase agreement. The court apparently reasoned that the Eppersons had waived any right to complain of defects by failing to complain prior to the close of escrow. With respect to the fraud claim, the court concluded that "the evidence presented contains no misrepresentation by defendants or their agents. . . ." Finally, because it found no breach of the agreement, nor any fraud in inducing the Eppersons to enter into the agreement, the court held there was no right to rescission.[2]

We have repeatedly held that summary judgment is proper only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Cladianos v. Coldwell Banker, 100 Nev. 138, 676 P.2d 804 (1984); Casarotto v. Mortensen, 99 Nev. 392, 663 P.2d 352 (1983); *see also* NRCP 56(c). Our review of the record reveals that several issues of fact remained to be resolved in the court below on both the misrepresentation and the contract causes of action set forth in the Eppersons' complaint, and that summary judgment was therefore improper.

## II. *The Misrepresentation Claim*

The tort action of deceit or misrepresentation requires the plaintiff to establish that the defendant made a false representation to him, with knowledge or belief that the representation was false or without a sufficient basis for making the representation. Further, the plaintiff must establish that the defendant intended to induce the plaintiff to act or refrain from acting on the representation, and that the plaintiff justifiably relied on the representation. Finally, the plaintiff must establish that he was damaged as a

---

[2]On appeal, the Eppersons have not challenged the dismissal of the rescission claim. Accordingly, we deem that claim to have been abandoned.

result of his reliance. *See* Sanguinetti v. Strecker, 94 Nev. 200, 577 P.2d 404 (1978); Lubbe v. Barba, 91 Nev. 596, 540 P.2d 115 (1975). *See generally* W. Prosser, Handbook on the Law of Torts, § 105, at 685-86 (4th ed. 1971). Whether these elements are present in a given case is ordinarily a question of fact. Lentz Plumbing Co. v. Fee, 679 P.2d 736 (Kan. 1984); Tice v. Tice, 672 P.2d 1168 (Okla. 1983). Respondents contend, however, that no genuine issues of fact remained to be decided on the Eppersons' misrepresentation claim. Respondents argue first that the Eppersons were barred from bringing such a claim, and second, that the Eppersons failed to present sufficient evidence of misrepresentation in support of their claim. We disagree.

First, respondents contend that the Eppersons were barred from bringing the misrepresentation claim because of an integration clause in the purchase agreement.[3] No relevant authority is cited in support of this proposition and, in fact, there is authority directly to the contrary, indicating that an integration clause does not bar a claim of this nature. *See* Herzog v. Capital Co., 164 P.2d 8 (Cal. 1945); Kett v. Graeser, 50 Cal. Rptr. 727 (Cal.Ct. App. 1966).

Additionally, respondents contend that the Eppersons waived their right to make a claim of misrepresentation because the Eppersons and their agent were given the opportunity to inspect the premises, and did in fact examine the premises on at least three occasions prior to the purchase of the home. Respondents further point out that the Eppersons took possession of the home eight days prior to the close of escrow and allowed escrow to close without objection. Respondents assert that, under these facts, the Eppersons should be charged with knowledge of the alleged defects in the solar heating system, as well as the leakage problems, prior to the purchase. Respondents therefore conclude that the Eppersons waived their right to complain of the problems when they permitted escrow to close.

We have previously held that a plaintiff who makes an independent investigation will be charged with knowledge of facts which reasonable diligence would have disclosed. Such a plaintiff is deemed to have relied on his own judgment and not on the defendant's representations. *See* Freeman v. Soukup, 70 Nev. 198, 265 P.2d 207 (1953). Nevertheless, an independent investigation will not preclude reliance where the falsity of the defend-

---

[3] Paragraph 14 of the contract provides, in pertinent part: "The foregoing constitutes the entire agreement between the parties and no verbal statements made by any party are a part hereof unless incorporated in writing."

ant's statements is not apparent from the inspection, where the plaintiff is not competent to judge the facts without expert assistance, or where the defendant has superior knowledge about the matter in issue. *See* Stanley v. Limberys, 74 Nev. 109, 323 P.2d 925 (1958); Bagdasarian v. Gragnon, 192 P.2d 935 (Cal. 1948). The question of whether the Eppersons could or should have discovered the alleged defects during their initial inspections of the home was a question of fact for the jury to decide. Accordingly, the district court erred by deciding this issue as a question of law prior to trial.

Respondents also contend the Eppersons failed to allege or establish that the respondents made any direct or express representations to them regarding the functioning or efficiency of the solar heating system, on which the Eppersons could have justifiably relied in purchasing the home. In this regard, respondents contend that the brochure that was shown to the Eppersons referred only to solar "implication," and made no representations regarding the functioning or efficiency of the system. Respondents also appear to contend that they cannot be held liable for the statements their listing agent made to the Eppersons regarding the system, or that the agent's representations were not in any event sufficient to cause the Eppersons' reliance.

We conclude, however, that a material issue of fact remains on the question of whether respondents misrepresented the nature of the solar heating system to the Eppersons. First, we note that a party may be held liable for misrepresentation where he communicates misinformation to his agent, intending or having reason to believe that the agent would communicate the misinformation to a third party. *See generally* W. Prosser, *supra,* § 107 at 703; Restatement (Second) of Torts, § 533 (1977). In her deposition in the court below, respondent Mylan Roloff admitted that she had told Michael Alexander, respondents' listing agent, that the home had a "solar feature" which included a "solar storage area for auxiliary heating." We conclude that it was for a jury to decide whether respondents intended or had reason to believe that their listing agent would tell prospective purchasers that the home contained a fully functioning solar heating system, based on Mrs. Roloff's statements.

In this regard, we also note that a defendant may be found liable for misrepresentation even when the defendant does not make an express misrepresentation, but instead makes a representation which is misleading because it partially suppresses or conceals information. *See* American Trust Co. v. California W.

States Life Ins. Co., 98 P.2d 497, 508 (Cal. 1940). *See also* Northern Nev. Mobile Home v. Penrod, 96 Nev. 394, 610 P.2d 724 (1980); Holland Rlty. v. Nev. Real Est. Comm'n, 84 Nev. 91, 436 P.2d 422 (1968). Therefore, even if the agent's statements and the statements in the brochure did not expressly misrepresent the status of the solar heating system, the Eppersons were entitled to argue to a jury that those statements were calculated to mislead them into believing that the home had a fully functioning solar heating system, and that they were justified in relying on those statements in purchasing the home. The court therefore erred by concluding that no genuine issue of fact remained on this matter.

Finally, with regard to the leakage problem, respondents argue that no affirmative representation was ever made that the house was free of leaks. At least implicitly, they argue that an action in deceit will not lie for nondisclosure. This has, indeed, been described as the general rule. *See discussion,* W. Prosser, *supra,* § 106, at 695-97. An exception to the rule exists, however, where the defendant alone has knowledge of material facts which are not accessible to the plaintiff. Under such circumstances, there is a duty of disclosure. Thus, in Herzog v. Capital Co., *supra,* the court upheld a jury's award of damages to the purchaser of a leaky house, holding under the circumstances of that case, that the jury correctly found that the vendor had a duty to reveal "the hidden and material facts" pertaining to the leakage problem. *Id.* at 10. In numerous other cases, involving analogous facts, a jury's finding of a duty of disclosure has been upheld. *See, e.g.,* Barder v. McClung, 209 P.2d 808 (Cal.Ct.App. 1949) (vendor failed to disclose fact that part of house violated city zoning ordinances); Rothstein v. Janss Inv. Corporation, 113 P.2d 465 (Cal.Ct.App. 1941) (vendor failed to disclose fact that land was filled ground). Therefore, the Eppersons were entitled to argue to a jury that respondents had knowledge of the leakage problem, that the existence of the problem was not apparent to the Eppersons and that respondents therefore had a duty to disclose the problem to them prior to their purchase of the home.

Accordingly, we conclude that numerous issues of fact remained in dispute on the Eppersons' claim of misrepresentation. The district court therefore erred by granting summary judgment on this claim.

### III. *The Contract Claim*

As stated above, the parties' contract provided that the home's "mechanical equipment" was to be in good operating condition at the close of escrow. The Eppersons' complaint alleges that this

condition was not satisfied, on the ground that the "solar heating system" is nonfunctional.

Respondents contend, and the district court apparently agreed, that the Eppersons waived their right to allege a breach of the contract because the Eppersons inspected the home and actually lived in the home prior to the close of escrow without complaining about any mechanical defects in the solar heating system. We note, however, that a waiver in this context has been defined as "an intentional relinquishment of a known right." J. Calamari and J. Perillo, The Law of Contracts § 11-34, at 446 (2d ed. 1977). The Eppersons' mere acceptance and occupation of the home alone could not constitute a waiver of their rights under the contract; in order to establish such a waiver, respondents would have to establish that the Eppersons knew or had reason to know that the solar heating system was defective. *See generally* Dial v. Graves, 351 So.2d 598 (Ala.Civ.App. 1977). Again, it is a question of fact for the jury to decide whether the Eppersons knew or should have known of the defect prior to the close of escrow. *Id.* The district court therefore erred by granting summary judgment on this issue.

Finally, respondents appear to contend that the solar heating system cannot be viewed as defective. In this regard, respondents assert that the Eppersons' own expert testified in his deposition that the system could produce approximately 6.6% of the annual heating load of the home. Respondents therefore argue that the Eppersons at most established only that the system was "inefficient" as opposed to defective. We note, however, that the Eppersons' expert witness also testified that the system was "worthless" because of its western exposure, because it would normally be covered by snow during the winter months, and because the "panel" is in the shade during peak collecting hours. The expert also testified that the system would only produce heat during the summer months. Accordingly, we conclude that the Eppersons made a prima facie showing that the system was defective. Therefore, this issue should have been presented to a jury for resolution.

## IV. *Conclusion*

For these reasons, we conclude that the district court erred in awarding summary judgment on appellants' fraud and contract claims. We reverse that portion of the judgment and remand this matter for trial. Appellants having abandoned their rescission claim, the judgment is to that extent affirmed.