291 F.Supp.2d 1186 (2003)
In re AGRIBIOTECH, INC., Debtor.
Anthony H.N. Schnelling, as Trustee of the Agribiotech Creditors' Trust, the Duly Appointed and Authorized Representative of the Chapter 11 Estates of Agribiotech Inc., et al., as Assignee of Growers, Plaintiff,
v.
Richard P. Budd, et al., Defendants.
Civ. No. CV-S-02-0537-PMP (LRL). Bankruptcy No. BK-S-00-10533-LBR. Adversary No. 02-1023-LBR.
United States District Court, D. Nevada.
November 10, 2003.
*1187 Candace C. Carlyon, Shea & Carlyon, Las Vegas, NV, Allan B. Diamond, Jay Madrid, Diamond, McCarthy, Taylor, Finley, Bryant & Lee, LLP, Dallas, TX, for Anthony H.N. Schnelling, Trustee.
Roy A. Ginsburg, James D. Kremer, Dorsey & Whitney, LLP, Minneapolis, MN, Janet L. Chubb, Jones Vargas, Las Vegas, NV, for Defendants Doug Fisher and Randy Ingram.

ORDER
PRO, Chief Judge.
On April 21, 2003, Defendants Randy Ingram ("Ingram") and Doug Fisher ("Fisher") filed a Motion to Dismiss First Amended Complaint (Doc. # 476). The Trustee filed a Consolidated Response to Defendants' Motions to Dismiss (Doc. # 495) on May 19, 2003. Ingram and Fisher filed a Reply (Doc. # 502) on June 17, 2003. In an order dated October 1, 2003 ("October Order"), the Court denied Ingram and Fisher's motion, but noted that Ingram and Fisher raised for the first time in their Reply the argument that, as a matter of law, silence cannot form the basis of a negligent misrepresentation claim (Doc. # 569). The Court granted the Trustee fourteen days to file a surreply to address Ingram and Fisher's argument. The Trustee filed a Surreply (Doc. # 581) on October 16, 2003.

I. BACKGROUND
This case arises out of the bankruptcy of Agribiotech, Inc. ("Agribiotech" or "ABT"). (Third Am. Compl. ¶ 8.) The Trustee brought the lawsuit in federal court against various individual and corporate Defendants, based on the rights assigned pursuant to the First Amended Joint Plan of Reorganization ("Plan"). (Id. ¶ 12.) Additionally, the Trustee filed a separate Complaint "as Assignee of the claims of forage and turfgrass seed farmers (the `Growers')" in Nevada state court which Defendants subsequently removed to this Court ("Growers' Complaint"). (See generally Notice of Removal of Civil Action (Clark County District Court, Case No. A451513) [Doc. # 1 in CV-S-02-0885].) The Trustee amended the Growers' Complaint in March of 2003. (Doc. # 438.) In the Growers' First Amended Complaint ("Complaint"), at issue here, the Trustee asserts claims of fraud and negligent misrepresentation against, among others, Ingram and Fisher.
As discussed in the October order, the Complaint seeks to hold Ingram and Fisher liable for fraud and negligence arising out of two occurrences. First, Ingram and Fisher attended the Growers meeting held on September 2, 1999, at which ABT Chief Executive Officer Richard Budd ("Budd") allegedly made misrepresentations and failed to disclose to the Growers various material pieces of information. The Complaint alleges Ingram and Fisher attended this meeting in their official capacities as ABT's Chief Financial Officer and General Counsel, but does not identify any statements Ingram or Fisher made at the meeting. Second, the Complaint alleges Ingram and Fisher "reviewed and approved" the "Dear ABT Growers" letter Budd sent to Growers following the September 2 meeting. The letter, signed only by Budd, stated:
[O]n Tuesday night, September 2, 1999, ABT assembled eight large alfalfa growers ... to meet with me and two other senior officers of ABT (Randy Ingram who is our Chief Financial Officer and Doug Fisher who is our Chief Legal *1188 Officer and head of communication) ... to hear their thoughts and concerns first hand. I felt it was an extremely productive meeting, and we want to share the highlights of the information which was provided.
....
[F]or a number of reasons, ABT's ability to pay growers is improving.
(Mot. of Defs. Doug Fisher and Randy Ingram to Dismiss First Am. Compl., Ex. C [Doc. # 476].) The Trustee alleges the statement that ABT's ability to pay the Growers was improving was false because Budd knew ABT's ability to pay the Growers was deteriorating rather than improving. The Trustee further alleges Ingram and Fisher "reviewed and approved" this letter, even though they also knew ABT's ability to pay was deteriorating rather than improving.

II. LEGAL STANDARD
In considering "a motion to dismiss, all well-pleaded allegations of material fact are taken as true and construed in a light most favorable to the non-moving party." Wyler Summit P'ship v. Turner Broad. Sys., Inc., 135 F.3d 658, 661 (9th Cir.1998). But the court does not necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations in plaintiff's complaint. See Clegg v. Cult Awareness Network, 18 F.3d 752, 754-55 (9th Cir.1994). A strong presumption exists against dismissing an action for failure to state a claim. See Gilligan v. Jamco Dev. Corp., 108 F.3d 246, 249 (9th Cir.1997). "`[T]he issue is not whether a plaintiff will ultimately prevail but whether [he] is entitled to offer evidence to support the claims.'" Id. (quoting Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), overruled on other grounds by Harlow v. Fitzgerald, 457 U.S. 800, 807, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). Consequently, the court should not grant a motion to dismiss "for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); see also Hicks v. Small, 69 F.3d 967, 969 (9th Cir.1995).
The liberal rules of notice pleading set forth in the Federal Rules of Civil Procedure do not require a plaintiff to set out in detail the facts supporting his claim. See Fed.R.Civ.P. 8; Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512-14, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). All the Rules require is "`a short and plain statement'" that adequately "`give[s] the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."' Swierkiewicz, 534 U.S. at 512, 122 S.Ct. 992 (quoting Conley, 355 U.S. at 47, 78 S.Ct. 99). Therefore, a plaintiff merely must plead sufficiently to "establish a basis for judgment against the defendant." Yamaguchi v. United States Dep't of the Air Force, 109 F.3d 1475, 1481 (9th Cir. 1997). Further, a claim is sufficient if it shows that the plaintiff is entitled to any relief which the court can grant, even if the complaint asserts the wrong legal theory or asks for improper relief. See Air Line Pilots Ass'n Int'l. v. Transamerica Airlines, Inc., 817 F.2d 510, 516 (9th Cir. 1987).

III. ANALYSIS
Nevada has adopted the Restatement (Second) of Torts definition of negligent misrepresentation. See Bill Stremmel Motors, Inc. v. First Nat'l Bank of Nev., 94 Nev. 131, 575 P.2d 938, 940 (1978). Under this theory of liability:
One who, in the course of his business, profession or employment, or in any other action in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their *1189 justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.
Restatement (Second) Torts § 552 (1977) (emphasis added); see also Bill Stremmel Motors, Inc., 575 P.2d at 940.
Ingram and Fisher move, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss the Complaint's negligent misrepresentation claim for failure to state a claim upon which relief may be granted. According to Ingram and Fisher, negligent misrepresentation by its nature requires a positive assertion, and they personally made no affirmative representations. The Trustee responds that Ingram and Fisher made misrepresentations through their conduct by attending the September 2 meeting and reviewing and approving the letter. The Trustee also argues several states have recognized negligent misrepresentation by omission, especially where coupled with a duty to disclose.
This Court finds Ingram and Fisher's conduct as alleged in the Complaint, without more, does not constitute "supplying" misinformation for purposes of a negligent misrepresentation claim. But the Court also finds Nevada would recognize the tort of negligent misrepresentation by nondisclosure, a cause of action based on an actor's negligent failure to disclose material information where there is a duty to disclose. Under this alternative theory, the Complaint states a claim for which relief may be granted.

A. Supplying Information
The Trustee argues Ingram and Fisher made positive assertions through their conduct when they attended the September 2 meeting and when they reviewed and approved the "Dear ABT Growers" letter. Nevada has not addressed circumstances like those alleged in the Complaint, nor do its opinions offer any insight as to whether Ingram and Fisher's alleged conduct might constitute "supplying" false information.
A review of decisions outside of Nevada reveals that a majority of courts would not consider attendance at a meeting or review and approval of a letter to be "supplying" information. Federal courts examining when a party "makes" a misrepresentation under Section 10(b) of the Securities Exchange Act and Rule 10b-5 generally have concluded that reviewing and approving another actor's statements does not constitute "making" a misrepresentation.[1] Even courts that construe more broadly the term "making" a misrepresentation have required substantial participation in the drafting of a misrepresentation such that an unnamed actor could be considered a co-author of the statement.[2]
*1190 Most courts would hold Ingram and Fisher's "review and approval" of the letter and mere silent attendance at the meeting do not constitute "making" misrepresentations or, for purposes of negligent misrepresentation under the Restatement, "supplying" false information. The Complaint alleges only that Ingram and Fisher attended a meeting and reviewed and approved a letter. The Complaint does not allege that either Ingram or Fisher had a hand in preparing Budd's statements at the meeting or advised Budd not to make various disclosures at the meeting. With respect to the letter, the Complaint does not allege that either Ingram or Fisher was the source of the alleged misrepresentation in the letter, or that they participated in drafting or editing the letter.
Following the wave of corporate and accounting scandals that have swept the American business community over the past few years, Nevada ultimately may adopt a standard under which Ingram and Fisher's alleged conduct would support a negligent misrepresentation claim. But Nevada has yet to signal this sort of move. Absent further direction from Nevada, this Court cannot hold that Ingram and Fisher's attendance at the meeting and "review and approval" of the letter, without more, constitute making a misrepresentation or supplying false information.

B. Negligent Misrepresentation by Nondisclosure
Although attending a meeting and reviewing and approving a letter do not constitute "supplying" information for purposes of a negligent misrepresentation claim, this Court is convinced that Nevada would adopt the Restatement's formulation that silence coupled with a duty to speak does constitute "supplying" information. Furthermore, the Court finds Ingram and Fisher's conduct, as alleged in the Complaint, would constitute "supplying" misinformation so as to form the basis of a negligent misrepresentation by nondisclosure claim.

1. Federal Court Determination of State Law
"When interpreting state law, federal courts are bound by decisions of the state's highest court." Strother v. S. Cal. Permanente Med. Group, 79 F.3d 859, 865 (9th Cir.1996) (quotation omitted). If the state has not addressed the particular issue, a federal court must use its best judgment to predict how the highest state court would resolve it "using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance." Id. (quotation omitted); Med. Lab. Mgmt. Consultants v. Am. Broad. Cos., Inc., 306 F.3d 806, 812 (9th Cir.2002). "In making that prediction, federal courts look to existing state law without predicting potential changes in *1191 that law." Hemmings v. Tidyman's Inc., 285 F.3d 1174, 1203 (9th Cir.2002). Although federal courts should not predict changes in a state's law, they "are not precluded from affording relief simply because neither the state Supreme Court nor the state legislature has enunciated a clear rule governing a particular type of controversy." Air-Sea Forwarders, Inc. v. Air Asia Co., Ltd., 880 F.2d 176, 186 (9th Cir.1989) (quotation omitted).

2. Negligent Misrepresentation by Nondisclosure
The parties agree Nevada has not considered whether one can "supply" false information through silence to support a negligent misrepresentation claim. Courts in other jurisdictions are divided on the issue.[3]
Because Nevada generally has adopted the Restatement in developing its common law governing deceit torts, the Court determines Nevada would recognize the tort of negligent misrepresentation by nondisclosure as outlined in the Restatement (Second) of Torts. See, e.g., Dow Chem. Co. v. Mahlum, 114 Nev. 1468, 970 P.2d 98, 111-14 (1998) (relying on Restatement's definitions regarding concert of action and aiding and abetting fraud, and negligent undertaking); Epperson v. Roloff, 102 Nev. 206, 719 P.2d 799, 803 (1986) (citing Restatement for proposition that a party may be held liable for misrepresentation where he communicates misinformation to his agent, intending or having reason to believe the agent would communicate the misinformation to a third party); Bill Stremmel Motors, Inc., 575 P.2d at 940 (adopting Restatement § 552 *1192 definition of negligent misrepresentation). Under the theory of negligent misrepresentation by nondisclosure as described in §§ 551 and 552:
(1) One who fails to disclose to another a fact that he knows may justifiably induce the other to act or refrain from acting in a business transaction is subject to the same liability to the other as though he had represented the nonexistence of the matter that he has failed to disclose, if, but only if, he is under a duty to the other to exercise reasonable care to disclose the matter in question.
(2) One party to a business transaction is under a duty to exercise reasonable care to disclose to the other before the transaction is consummated,
....
(e) facts basic to the transaction, if he knows that the other is about to enter into it under a mistake as to them, and the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of those facts.
Restatement (Second) of Torts § 551 (1977). Pursuant to § 551, silence about material facts basic to the transaction, when combined with a duty to speak, is the functional equivalent of a misrepresentation or "supplying false information" under Restatement § 552.
In addition to generally following the Restatement, Nevada already has recognized a cause of action for fraud by nondisclosure where a special relationship between the parties imposes a duty to speak. See Epperson, 719 P.2d at 804 (holding defendant owes a duty to disclose "where the defendant alone has knowledge of material facts which are not accessible to the plaintiff"); Mackintosh v. Jack Matthews and Co., 109 Nev. 628, 855 P.2d 549, 553 (1993) (noting failure to disclose is equivalent to fraudulent concealment any time parties are not on equal footing and one party reposes confidence in the other due to the other's position); see also Nev. Power Co. v. Monsanto Co., 891 F.Supp. 1406, 1417 (D.Nev.1995) (concluding that fraud by nondisclosure under Restatement § 551 and Nevada law requires a duty to disclose). The Court concludes Nevada, if given the opportunity, also would extend tort liability to those who negligently fail to disclose material facts where a special relationship imposes a duty to disclose.
In addition to showing a duty to disclose under § 551, a plaintiff alleging negligent misrepresentation under § 552 must show particular circumstances warranting imposition of tort liability. The Restatement takes this position because "the fault of the maker of [a negligent] misrepresentation is sufficiently less [than that of the maker of a fraudulent misrepresentation] to justify a narrower responsibility for its consequences." Restatement (Second) of Torts § 552, cmt. a (1977). The Restatement confines a tortfeasor's liability for negligent misrepresentations to only those persons to whom he knows the information will be supplied, and only for losses incurred in the kind of transaction in which the misrepresentation is expected to influence them. See id. § 552, cmt. i.
The Court previously ruled that in the context of fraudulent nondisclosure, Ingram and Fisher owed a duty to disclose due to the Growers placing confidence in Ingram and Fisher because of their positions as CFO and General Counsel of ABT. (Order, October 1, 2003, at 13-14.) The Court determined that Ingram and Fisher, as CFO and General Counsel of ABT, could not sit silent while Budd made various alleged misrepresentations about ABT's financial health where Ingram and Fisher allegedly knew the statements were false. The Growers meeting was called, and the "Dear ABT Growers" letter written, *1193 for the specific purpose of assuring the Growers ABT could pay for their seed and with the express goal of inducing the Growers to turn over their seed to ABT. Budd's statements to the Growers about ABT's financial health allegedly were bolstered by the silent acquiescence of ABT's CFO and General Counsel, two professionals whom the Growers allegedly trusted based on their positions and specialized knowledge of ABT's financial health. The Complaint alleges the Growers relied to their detriment on the overall presentation, including Ingram and Fisher's alleged tacit approval through silence.
These facts give rise to a duty to speak under a negligent misrepresentation theory. Under § 551(2)(e) of the Restatement, a party is under a duty to exercise reasonable care to disclose "facts basic to the transaction" if he knows the other party is about to enter into the transaction under a mistake as to the basic facts, and, "because of the relationship between them, the customs of the trade or other objective circumstances," the other party reasonably would expect the alleged tortfeasor to disclose those facts. Restatement (Second) of Torts § 551(2)(e) (1977).
Here, ABT's ability to pay for the Growers' seed is a fact basic to the transaction. The Complaint alleges Ingram and Fisher knew the assurances the Growers received that ABT would be able to pay for the seed were mistaken or false. As discussed above, the relationship between the parties and the objective circumstances of the campaign gave rise to a duty on the part of Ingram and Fisher to exercise reasonable care to disclose accurate information.
The Complaint's allegations also fall within the narrow confines of negligent misrepresentation liability. Ingram and Fisher knew the meeting was aimed at eight specific Growers, and the letter was directed at "ABT Growers." Thus, they knew the limited target audience at which the communications were directed. Ingram and Fisher also knew the purpose of the meeting and letter: to induce the Growers to turn over their seed. The Complaint seeks redress for misrepresentations that allegedly achieved their purpose when the Growers turned over their seed and suffered financial losses as a result.
Accordingly, the Court concludes Nevada would recognize negligent misrepresentation by nondisclosure where a special relationship created a duty to disclose. Viewing the Complaint's allegations in the light most favorable to the Trustee, it does not appear beyond doubt that the Trustee can prove no set of facts in support of a negligent misrepresentation by nondisclosure claim which would entitle it to relief. Wyler Summit P'ship, 135 F.3d at 661; Conley, 355 U.S. at 45-46, 78 S.Ct. 99; Hicks, 69 F.3d at 969. The Trustee's failure to identify the correct legal theory is not fatal to the claim at the 12(b)(6) stage. Air Line Pilots Ass'n Int'l., 817 F.2d at 516. Because the Complaint states a claim for which relief may be granted, the Court will deny Ingram and Fisher's motion to dismiss the negligent misrepresentation by nondisclosure claim.

IV. CONCLUSION
IT IS THEREFORE ORDERED that Defendants Randy Ingram and Doug Fisher's Motion to Dismiss First Amended Complaint Pursuant to Rules 9(b) and 12(b)(6) (Doc. # 476) is hereby DENIED.
NOTES
[1] See, e.g., Ziemba v. Cascade Intern., Inc., 256 F.3d 1194, 1205 (11th Cir.2001) (a "significant role in drafting, creating, reviewing or editing allegedly fraudulent letters or press releases" does not constitute "making" a misrepresentation); Wright v. Ernst & Young LLP, 152 F.3d 169, 175 (2d Cir.1998) (to "make" a misrepresentation and fulfill the reliance element, the misrepresentation must be attributed to the specific actor at the time of public dissemination); In re Rent-Way Sec. Litig., 209 F.Supp.2d 493, 503 (W.D.Pa.2002) (accountant's review and approval of unaudited quarterly reports not a misrepresentation); In re Kendall Square Research Corp. Sec. Litig., 868 F.Supp. 26, 28 (D.Mass.1994) (auditor's "review and approval" of quarterly financial statements does not constitute "making" a material misstatement); Vosgerichian v. Commodore Int'l, 862 F.Supp. 1371, 1378 (E.D.Pa.1994) (allegations that accountant "advised" and "guid[ed]" client in making allegedly fraudulent misrepresentations insufficient allegation that accountant "made" misrepresentation).
[2] See, e.g., In re Software Toolworks Inc., 50 F.3d 615, 628 n. 3 (9th Cir.1994) (plaintiff sufficiently alleged defendant "made" a misrepresentation where one letter to the SEC stated it "was prepared after extensive review and discussions with" defendant and referred the SEC to two of defendant's partners for further information and defendant "played a significant role in drafting and editing" the second letter); In re Enron Corp. Sec., Derivative & ERISA Litig., 235 F.Supp.2d 549, 610 (S.D.Tex.2002) (concluding professionals may be liable for misrepresentations when they "take the affirmative step of speaking out, whether individually or as essentially an author or co-author in a statement or report, whether identified or not"); Carley Capital Group v. Deloitte & Touche, L.L.P., 27 F.Supp.2d 1324, 1334 (N.D.Ga.1998) (adopting standard urged by SEC that an actor "makes" a misrepresentation when it, "acting alone or with others, creates a misrepresentation even if the misrepresentation is not publicly attributed to it"); In re ZZZZ Best Sec. Litig., 864 F.Supp. 960, 970 (C.D.Cal.1994) (concluding an actor makes a misrepresentation if the actor is "intricately involved" in the misrepresentation's creation and the resulting deception).
[3] Compare Premier Bank v. Tierney, 114 F.Supp.2d 877, 886 (W.D.Mo.2000) (silence cannot be a negligent misrepresentation absent a legal duty to speak); Weisblatt v. Minn. Mut. Life Ins. Co., 4 F.Supp.2d 371, 380 (E.D.Pa.1998) (predicting Pennsylvania would hold that an omission or nondisclosure is actionable as a negligent misrepresentation only if there is a duty to speak); Masso v. United Parcel Serv. of Am., Inc., 884 F.Supp. 610, 616 (D.Mass.1995) (silence may be actionable where relationship of the parties creates legal or equitable obligation to communicate all the facts); Matthews v. Kincaid, 746 P.2d 470, 471 (Alaska 1987) (negligent misrepresentation requires either a misrepresentation or omission of a fact where there is a duty to disclose); Alaface v. Nat'l Inv. Co., 181 Ariz. 586, 892 P.2d 1375, 1387 n. 3 (1994) ("Negligent misrepresentation may be by omission or nondisclosure of material facts as well as by overt misrepresentation."); Binette v. Dyer Library Ass'n, 688 A.2d 898, 903 (Me.1996) (holding failure to disclose may constitute supplying false information to support negligent misrepresentation claim where such failure breaches a statutory duty); Lane v. Oustalet, 850 So.2d 1143, 1148 (Miss. App.2002) (listing elements of negligent misrepresentation to include "a misrepresentation or omission of a fact"); R.A. Peck, Inc. v. Liberty Fed. Sav. Bank, 108 N.M. 84, 766 P.2d 928, 932 (1988) (concluding "a person may be held liable for damages caused by a failure to disclose material facts to the same extent that a person may be liable for damages caused by fraudulent or negligent misrepresentation"); Richey v. Patrick, 904 P.2d 798, 802 (Wyo.1995) (rejecting theory of negligent misrepresentation based on nondisclosure of information, but finding potential liability under Restatement (Second) of Torts § 551 nondisclosure theory), with Wilson v. Century 21 Great W. Realty, 15 Cal.App.4th 298, 18 Cal. Rptr.2d 779, 783 (1993) ("Negligent misrepresentation is a species of fraud or deceit specifically requiring a positive assertion" based on California statutory language); Burman v. Richmond Homes Ltd., 821 P.2d 913, 919 (Colo.App.1991) (failure to make disclosure not evidence of supplying false information to support claim of negligent misrepresentation); Martin v. Ohio State Univ. Found., 139 Ohio App.3d 89, 742 N.E.2d 1198, 1209 (2000) ("A negligent misrepresentation claim does not lie for omissions: there must be an affirmative false statement."); Hagans v. Woodruff, 830 S.W.2d 732, 736 (Tex.App. 1992) (stating defendant must provide false information and refusing to impose on broker duty to investigate and disclose).