MEMORANDUM *
Courtesy Oldsmobile, Inc. (“Courtesy”) appeals the district court’s summary judgment in favor of General Motors Corporation (“GM”) in an action arising from GM’s decision to phase out its Oldsmobile Division. Courtesy contends that questions of material fact exist as to whether GM breached three articles of the Dealer Sales and Service Agreement (“Dealer Agreement”) and violated four provisions of the Nevada Motor Vehicle Franchise Act (“NMVFA”). We have jurisdiction under 28 U.S.C. § 1291, and we affirm.
We review the district court’s grant of summary judgment de novo and may affirm on any ground supported by the record. San Jose Christian Coll. v. City of Morgan Hill, 360 F.3d 1024, 1029-30 (9th Cir.2004). We also review the district court’s interpretation of state law de novo. Emrich v. Touche Ross & Co., 846 F.2d 1190, 1198 (9th Cir.1988).
I. Courtesy’s Contract Claims
The Dealer Agreement is governed by Michigan law, which requires us to determine whether the disputed contractual language is ambiguous in the first instance. See Port Huron Educ. Ass’n, MEA/NEA v. Port Huron Area Sch. Dist., 452 Mich. 309, 550 N.W.2d 228, 237 (1996). We determine the meaning of a contractual provision as a matter of law where its language is clear and unambiguous. Id. However, if the language is susceptible to more than one reasonable interpretation, its meaning must be determined by a finder of fact. Id. We must construe the Dealer Agreement in a way that “give[s] effect to every word, phrase, and clause in [the] contract and avoid[s] an interpretation that would render any part of the contract surplusage or nugatory.” AFSCME Int’l Union v. Bank One, 267 Mich.App. 281, 705 N.W.2d 355, 358 (2005) (quotation marks omitted).
In light of the applicable State law, we conclude that the district court properly granted summary judgment on Courtesy’s breach of contract claims for the following reasons:
A. The Term of Agreement provision does not give Courtesy an absolute “opportunity to enter into a new Agreement(s) at the expiration date.” If the opportunity were absolute, Article 15.2.1 would be rendered mere surplusage insofar as it applies to situations where the Dealer Agreement “expires ... and General Motors does not offer Dealer ... a new dealer agreement.” Because the Dealer Agreement does not prescribe a procedure by which GM can effect a non-renewal pursuant to this portion of Article 15.2.1, the administrative procedure for discontinuing a franchise set forth in the NMVFA, Nev.Rev.Stat. § 482.36352, is incorporated into the contract. See Ziegler v. Witherspoon, 331 Mich. 337, 49 N.W.2d 318, 327 (1951) (“[L]aws which subsist at the time and place of the making of a contract, and where it is to be performed, enter into and form a part of it, as fully as *76 if they had been expressly referred to or incorporated in its terms.”) (quoting Von Hoffman v. City of Quincy, 71 U.S. (4 Wall.) 535, 550, 18 L.Ed. 403 (1866)). It is undisputed that GM nonrenewed the Agreement in accordance with section 482.36352. See discussion infra Part II.A.
B. Article 4.1 does not create an actionable right to profit. The second paragraph of Article 4.1 clarifies that the “opportunity to achieve a reasonable return on investment” is one of several “objectives” of GM’s dealer network plan. When read in context, the phrase is unambiguously aspirational and insufficient to impose an obligation on GM.
C. GM’s obligation to make a certain mix of models available under Article 6.4.1 is expressly conditioned on GM’s reservation of its “discretion in accepting orders and distributing Motor Vehicles” under Article 6.1. Article 6.1 states that GM’s discretionary “judgments and decisions are final” and gives Dealers notice that the availability and distribution of vehicles may be affected by many factors, including “consumer demand” and “other conditions beyond the control of General Motors.” Courtesy has not identified evidence showing that GM abused its discretion or failed to fill any order Courtesy placed with GM during the term of the contract.
II. Courtesy’s Statutory Claims
We also hold that the district court properly granted summary judgment on Courtesy’s statutory claims because:
A. The undisputed facts show that GM did not modify any of Courtesy’s rights under the Dealer Agreement in contravention of Nev.Rev.Stat. §§ 482.36354 and 482.3638(7). GM’s distribution of vehicles during the phase-out period was consistent with its reserved discretion under Article 6.1 and was not an impermissible modification of the franchise under Nevada law. The alleged modifications related to Article 4.1 and the “Purpose of the Agreement” concern contractual aspirations rather than obligations, so GM cannot be liable on those bases. Finally, it is undisputed that GM complied with the discontinuation procedures set forth in Nev.Rev.Stat. § 482.36352. The statute provides for an administrative appeals process, but Courtesy did not protest GM’s decision before the Department of Motor Vehicles as that process requires. We decline to address this unexhausted claim.
B. GM cannot be liable under Nev.Rev.Stat. § 482.36371(l)(d) because Courtesy never attempted to sell or transfer its Oldsmobile franchise. Subsection 482.36371(l)(d)’s use of the phrase, “from receiving fair and reasonable compensation,” clearly contemplates a sale or transfer.
C. Even when viewed in the light most favorable to Courtesy, none of the alleged misleading statements constitutes an unfair practice under Nev.Rev.Stat. § 482.36385(6). The statements at issue are not actionable as “advertising” under the statute because they were not directed at the public to promote the sale of Olds-mobiles. See Black’s Law Dictionary 59 (8th ed.2004) (defining “advertising,” in relevant part, as “[t]he action of drawing the public’s attention to something to promote its sale”). Nor do the statements qualify as “deceptive acts”; they were not knowingly false or uttered with reckless disregard for the truth because they were made when GM was still trying to keep Oldsmobile afloat and before GM’s senior management and Board of Directors finalized the decision to phase out the line. See Epperson v. Roloff, 102 Nev. 206, 719 P.2d 799, 802 (1986) (noting that the action of deceit requires a plaintiff to show, *77 among other things, that the defendant’s representation was knowingly false or lacked a basis in truth).
AFFIRMED.

 This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.